451 A.2d 542

Thelma O'MALLEY, Administratrix of the Estate of William F. Gavulic, deceased; Thelma O'Malley, Administratrix of the Estate of Shirley Ann Gavulic, deceased; Thelma O'Malley, Administratrix of the Estate of Kevin Gavulic, deceased; Thelma O'Malley, Administratrix of the Estate of Brian Gavulic, deceased, and William Gavulic, a minor, by Thelma O'Malley, his maternal grandmother and natural guardian, and Michael Gavulic, a minor by Thelma O'Malley, his maternal grandmother and natural guardian, Appellants,

v.

The CONTINENTAL INSURANCE COMPANY, a corporation.

Superior Court of Pennsylvania.

Argued Oct. 15, 1981.

Filed Oct. 8, 1982.

Petition for Allowance of Appeal Denied Jan. 31, 1983.

Peter J. Mansmann, Pittsburgh, for appellants.
John D. Rhodes, Pittsburgh, for appellee.

Before WIEAND, JOHNSON and MONTEMURO, JJ.

WIEAND, Judge:

This is an appeal from a judgment entered on the verdict of a jury which found that Continental Insurance Company, appellee, had not provided coverage for and was not required to defend the causes of action asserted against its assured by Thelma O'Malley, appellant herein.[1]  We affirm.

William and Shirley Gavulic, together with sons Kevin and Brian, died in a fire at their residence which also made orphans of William, Kimberly and Michael.  An action in trespass was instituted against C.J. Lazar & Sons Construction, which had installed a water heater in the Gavulic home a short time before the fire.  Appellee was Lazar's liability insurance carrier.  Lazar, however, had not purchased "completed operations" coverage.  Indeed, this risk was specifically excluded by the terms of the written policy.[2]  Contend-

---

1.  Thelma O'Malley asserted claims in various representative capacities.  In the caption, her representative capacities are identified as follows: THELMA O'MALLEY, Administratrix of the Estate of William F. Gavulic, deceased; THELMA O'MALLEY, Administratrix of the Estate of Shirley Ann Gavulic, deceased; THELMA O'MALLEY, Administratrix of the Estate of Kevin Gavulic, deceased; THELMA O'MALLEY, Administratrix of the Estate of Brian Gavulic, deceased, and William Gavulic, a minor, by THELMA O'MALLEY, his maternal grandmother and natural guardian, and Michael Gavulic, a minor by THELMA O'MALLEY, his maternal grandmother and natural guardian.

2.  The policy of insurance was labelled: "Manufacturers' and Contractors' Liability Insurance Coverage for premises and FOR THE NAMED INSURED'S OPERATIONS IN PROGRESS."  Specifically, the policy provided:

     The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (a) bodily injury or (b) property damage *to which this insurance applies* caused by an occurrence ... (R. 493, emphasis supplied).
     Exclusions
     This insurance does not apply ... (m) to bodily injury or property damage included within the completed operations hazard or the products hazard; ...
     Definitions

ing that the fire had occurred after Lazar completed installation of the water heater, appellee refused to defend the several actions brought against Lazar by Mrs. O'Malley. In an ensuing trial, verdicts totalling $225,000.00 were returned against Lazar. Lazar subsequently assigned his rights under the policy to Mrs. O'Malley, who commenced the instant action against Continental. She sought recovery not only for the policy limits of $20,000.00 but also, based on alleged bad faith on the part of the insurer, the total amounts of the verdicts recovered as well as Lazar's counsel fees. This second action resulted in a jury verdict for appellee.

Appellant contends that she is entitled to a new trial because of trial error occurring when the court refused to charge as requested in the following submitted point:

Even where a policy is written in unambiguous terms, the burden of establishing the applicability of an exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him.

In *Hionis v. Northern Mutual Insurance Co.,* 230 Pa.Super. 511, 327 A.2d 363 (1974), this Court held that an insurer has

"Completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and insured. "Operations" include materials, parts, or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) When all operations to be performed by or on behalf of the named insured under the contract have been completed.

(2) When all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(3) When the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete shall be deemed completed.

the burden of establishing the insured's awareness and understanding of an exclusion regardless of the clarity or ambiguity of the policy language. This decision was subsequently followed in *Klischer v. Nationwide Life Insurance Co.,* 281 Pa.Super. 292, 422 A.2d 175 (1980) and *Kelmo Enterprises, Inc. v. Commercial Union Insurance Co.,* 285 Pa.Super. 13, 426 A.2d 680 (1981). In those cases, the Court said:

> The major premise upon which *Hionis* rests is the vast inequality of bargaining power between the insurer and the typical purchaser of insurance. As a direct result of that disparity, the insurer may dictate the terms and conditions of the policy. Whether the policy is clear and precise or whether it is oblique and ambiguous, the disparity between the parties remains the same. Moreover, the insured's primary interest, which is obtaining the maximum coverage for his insurance dollar, is no less valid when the policy is unambiguous than it is when the policy is obscure. The policies served by *Hionis* are particularly pertinent when, as here, the insured buys insurance expecting to be covered for certain risks .... Insurers are not unduly burdened by a requirement that they explain the exclusions of their policies to insureds so that the insured can make an informed decision either to assume the excluded risks or to obtain additional insurance to protect against them.

*Klischer v. Nationwide Life Insurance Co., supra* 281 Pa.Super. at 299, 422 A.2d at 178; *Kelmo Enterprises, Inc. v. Commercial Union Insurance Co., supra* 285 Pa.Super. at 19, 426 A.2d at 683.

In the instant case, the insurer unequivocally met the burden which these decisions impose. Not only did Lazar intentionally purchase the least expensive coverage available, but he obtained the assistance of his attorney in doing so. His attorney reviewed the complete policy and the coverage afforded thereby and recommended that Lazar buy it. Moreover, Lazar testified regarding that which his insurance agent had told him as follows:

He said while we are on the job it covers everything, but while we were off the job it didn't.

And Lazar's son, a partner in the business, gave the following testimony:

[M]y idea of our policy at the time was that we would be covered for full liability, that if anything would happen to anyone on the job while we were working there, you know, that we would have insurance.

When he was asked further, "you knew that if an accident occurred after you were off the job that your insurance would not apply," he responded: "That's right."

█ In view of this evidence, there was no longer a disputed issue regarding the insured's knowledge and understanding of the "completed operations" exclusion in the policy. The insured admittedly had been aware of the exclusion and its meaning. Thus, the insurer had met its burden, and there was no need to instruct the jury concerning the rule in *Hionis*. The jury could now focus more clearly on whether the insured's operations had, in fact, been completed; and the trial court could adequately charge, as it did:

Now the burden of proving the . . . applicability of an exclusion under the facts is the burden of the defendant. In other words, the defendant raises as an affirmative defense . . . that we are not liable because the policy exclusions and the facts do not warrant recovery, and their burden of proving this to you is by the fair weight or the preponderance of the evidence.

Record, p. 702.

█ Even if erroneous, however, the omission of the instruction requested by appellant would not have warranted another trial. "Error in the abstract is not an adequate reason to award a new trial . . . . Before a court will order a new trial, it must conclude that the errors at trial led to an incorrect result." *Warren v. Mosites Construction Co.,* 253 Pa.Super. 395, 403, 385 A.2d 397, 401 (1978). In view of the testimony of the insureds in the instant case, it can be determined beyond peradventure of a doubt that the verdict

was not influenced by a failure of the trial court to charge on the insurer's burden of proving the insured's understanding of the policy exclusion.

Appellant next argues that the trial court erred when it refused to withdraw a juror following these remarks made by appellee's counsel during closing argument:

There are areas within the field of insurance law, within the field of claims adjustment, and within the field of most of the things that you do in your lifetime where you come to an honest decision, I'm right, and you take your position, you take your stand, and you defend your position. And the fact that eight or nine years later because of changes in the law or because of changes in personalities or because of the death of a witness you come into court and someone says, Well, it was even steven and evidence is a little bit more in favor of coverage than it is against so we are going to find yes, there was coverage, they made a mistake. That can happen. That may be happening here, I don't know, but I hope not.

But George Loutzenhiser was not guilty of bad faith when he wrote his letters of disclaimer. Our position is that there was room for an honest decision by him at that time based on the evidence he then had that there was no coverage and, in fact, we think it's still a good decision today. But if we're wrong, we contend that it is not because of anyone's bad faith. It is very easy in the insurance industry, ladies and gentlemen, for every claims adjuster and every claims supervisor to pay and pay and pay because then there is never any litigation and nobody ever proved you were wrong. No one ever proves you're wrong if you pay.

And here is a big claim. Here is a claim that can go to hundreds and thousands of dollars. Pay it and be done with it. Make somebody else pay that money in higher premiums later on. Pay it and get rid of it. That's the easy way.

I suggest to you that the decision of George Loutzenhiser when he disclaimed and the decision of George and Mr.

Racanelli when he affirmed the disclaimer and ratified it in January of '72 was a conscientious, deliberate, fair, and reasonable decision and, therefore, if your decision should be in favor of coverage for whatever reason I don't know at this time, I would ask you to find that the decision was made in good faith and not because of any corrupt motive on the part of these men in an effort to hurt the Lazars or someone else.

(T. 659–661)

■ "[T]he matter of withdrawing a juror because of the line of argument pursued by counsel in addressing a jury . . . is subject largely to the discretion of the trial court [citations omitted]. Whether a court abuses its discretion in refusing to withdraw a juror because of improper remarks of counsel must be determined by the circumstances under which the statement was made and by the precautions taken by the court and counsel to prevent its having a prejudicial effect." *Martin v. Philadelphia Suburban Transportation Co.,* 435 Pa. 391, 394, 257 A.2d 535, 537 (1969) quoting *McCune v. Leamer,* 383 Pa. 434, 437–38, 119 A.2d 89, 90 (1956). See also: *Smith v. Evans,* 421 Pa. 247, 250–51, 219 A.2d 310, 312 (1966); *Easter v. Hancock,* 237 Pa.Super. 31, 36–37, 346 A.2d 323, 327 (1975). Trial counsel must be expected to advance a spirited argument to support his client's cause, but he may not take unwarranted liberties with the evidence or arouse prejudices by exaggerated accusations. *Purcell v. Westinghouse Broadcasting Co.,* 411 Pa. 167, 184–85, 191 A.2d 662, 671 (1963); *Easter v. Hancock, supra.*

■ The remarks of counsel in the instant case were prompted by appellant's claim for damages based on an averment that appellee had been guilty of bad faith in denying coverage. Counsel argued that the decision to deny coverage had been the result of conscientious deliberation and had been made despite a recognition of the potential financial consequences. It was not argued that the jurors would themselves be affected financially in any way by the verdict. The argument was premised upon insurance prac-

tices, an issue in the case, and was not calculated to arouse the juror's prejudices or influence their decision unfairly. In view of appellant's charge of bad faith and the claim for damages based thereon, we cannot say that counsel's argument had no place in the closing address. We conclude, therefore, that the trial court did not abuse its discretion in denying appellant's motion to withdraw a juror.

Judgment affirmed.