## Lehigh Electric & Engineering Co. v. Selected Risks Insurance Co.

*Charles A. Shaffer, Paul M. Pugliese,* for plaintiffs.
*John J. Aponick, Jr.,* for defendant.

TOOLE, *J.*, December 9, 1982—We are asked in this declaratory judgment action to construe a comprehensive general liability policy and determine whether the insured may recover expenses incurred in preventing or mitigating property damage to others.

Lehigh Electric and Engineering Co., Inc. (Lehigh) and Joseph J. Menn, Sr. (Menn) initiated this

action by complaint[1] to which Selected Risks Insurance Company (Insurer) filed preliminary objections[2] in the nature of a demurrer and a motion to strike assigning the following reasons therefor:

"1. Plaintiffs' complaint fails to state a cause of action against defendant for the reason that the policy of insurance upon which suit is brought, as a matter of law, affords no coverage for the sums expended or to be expended by plaintiffs in an effort to clean up the spillage of PCB fluid in order to prevent and mitigate the occurrence of damage to the property and persons of others.

2. Plaintiffs have an adequate remedy at law, to wit, an action in assumpsit against defendant for reimbursement of any sums expended by plaintiff in cleaning the alleged spillage."

The only objection pursued in the brief and at oral argument was the demurrer outlined in paragraph 1 and, accordingly, the objection set forth in paragraph 2 is deemed abandoned. Commonwealth v. Marcocelli, 271 Pa. Super. 411, 413 A.2d 732, 735 (1979).[3]

The complaint in this case alleges that Lehigh operated a business involving the service and repair of

---

1. A declaratory judgment proceeding is an appropriate means for resolving controversies relating to the question of coverage under a policy of insurance. Crown Cork & Seal, Inc. v. Aetna Casualty & Surety Co., 16 D. & C. 3d 525 (1980). The Declaratory Judgment Act appears in the Judicial Code, 42 Pa. C.S.A. §7531 et seq.

2. The preliminary objections were filed pursuant to Pa. R.C.P. 1601(a), 1509(a) and 1017(b).

3. In any event, the second objection is answered by the Declaratory Judgment Act which provides that the remedy therein provided is "additional and cumulative" to all other available remedies except in three specific exceptions, none of which apply in this case. 42 Pa. C.S. §7541(b).

various electrical apparatus on property owned by Menn. The insurer here involved issued a comprehensive general liability policy to Lehigh and Menn (hereinafter referred to as the Insureds), which policy was in full force and effect from May 23, 1980, to May 23, 1981. On or about March 15, 1981, and on various other occasions, a sudden and accidental spillage of polychlorinated biphenyl (PCB) fluid resulted when unknown persons overturned and disturbed various electrical apparatus and equipment stored on the property. As a result of the spillage, it is alleged that the Insureds have been and will be required to expend sums in an effort to clear up the spillage in order to prevent and mitigate the occurrence of damage to the property and persons of others.

The policy before us provides, under the "Coverage B-Property Damage Liability" section that:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury or . . . property damage . . . caused by an occurrence. . . ."

Under the exclusion section of the policy, the following appears:

"This insurance does not apply:

'(f) to bodily injury or property damage arising out of the discharge, disbursal, release or escape of . . . toxic chemicals, liquids or gases . . . contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; that this exclusion does not apply if such discharge, disbursal, release or escape is sudden and accidental. . . .'

(k) To property damage to (1) property owned or occupied by or rented to the insured; (2) property used by the insured, or (3) property in the care, cus-

tody or control of the insured or as to which the insured is for any purpose exercising physical control. . . ."

The insureds now seek, as is their right, judicial construction of the insurance policy and a declaration of their rights and the extent of the liability of the insurer thereunder. 42 Pa. C.S. § 7533. The language contained in the instant policy is strikingly similar to that considered by the Dauphin County Court in Aronson Associates, Inc. v. Pennsylvania National Mutual Casualty Insurance Company, 14 D. & C. 3d 1 (1977) which the insureds cite as controlling and determinative of the present issue. The insurer, on the other hand, contends that the instant policy clearly provides no such coverage. The insurer also urges us to ignore the Aronson decision "because it is a poorly reasoned and illogical decision," and also because it is distinguishable on its facts from the instant case.

A number of jurisdictions have considered and determined the issue now before the court. Some courts have denied recovery on the basis that the policy contract should not be extended by judicial construction while others have concluded that an insurer relieved from possible liability claims by preventive measures should be required to reimburse the insured for those expenses. As observed in an annotation, "the cases are sharply divided, both in their results and rationales". See Annotation 33 A.L.R. 3d 1262 § 5, p. 1272.

We agree with the insured in this case that Aronson is both persuasive and controlling on the question of coverage. We also reject the insurer's contention that we ignore Aronson particularly

since that decision has apparently been affirmed by the Superior Court.[4]

In the decision in Aronson, the court concluded that coverage was required under the precedent and authority of Leebov v. United States Fidelity & Guaranty Company, 401 Pa. 477, 165 A.2d 82 (1960). An examination and analysis of both cases is essential to an understanding of our resolution of the issue before us.

In Aronson, the insured was engaged in the distribution of petroleum products and maintained several large storage tanks on its property. A large quantity of gasoline escaped from one of the tanks when some underground piping ruptured as a result of extremely cold weather conditions. The Department of Environmental Resources was informed of the leakage and they advised the insured that the leakage constituted a violation of the Clean Streams Law and also that under the rules of the Department, the insured was required to take all necessary steps to remove the gasoline from the ground. The insured then contacted a geologist and undertook to secure and implement a plan to prevent contamination of nearby water supplies and adjoining properties. A series of recovery and monitor wells were drilled in the area surrounding the tanks in an effort to draw the gasoline to a low point where it could then be pumped from the ground. The court was asked in that declaratory judgment proceeding to determine whether certain insurance policies covered the expenses incurred by the insured under the circumstances of that case.

---

4. See editor's note to the Aronson case, supra, p. 11: "Order affirmed by the Pa. Superior Court per curiam on August 16, 1979."

In Leebov the insured, a building contractor, was engaged in excavating along a hillside when a landslide occurred resulting in damage to one of the dwellings atop the hill which collapsed. The insured took immediate measures to prevent any further landslide and harm or damage to the adjoining properties. The insured then brought suit to recover his expenses in arresting the landslide and preventing other serious damage and to recover an amount the insured was required to pay as the result of a law suit brought by a damaged property owner.

It is clear that under the circumstances of Aronson and Leebov that an insured may be entitled to reimbursement for the costs or expenses incurred in preventing or mitigating damage or loss to the property of others. However, it is not any or every loss or damage to others that requires an insurer to pay the cost of preventive measures. It is important to note that in both Aronson and Leebov the damage to the property of others was not just a possibility, it was an established fact. In Leebov, the landslide had already damaged an adjoining property, while in Aronson, the gasoline had already made its way into the underground water of the Commonwealth.[5] In addition to proof that the property of others was affected and/or damaged in both of those cases, it was also established that the preventive measures taken were necessary to avoid or avert greater harm to the property of others.

We agree with the insurer that they should not be required to pay an insured to clean up his own back yard. However, we also feel that under the circumstances it would be both unreasonable and unfair to deny coverage unless and until actual loss or dam-

5. The court in Aronson noted (p. 8) that "liability under the Clean Streams Law . . . had already attached."

age resulted to adjoining property. In this regard, the court, in Leebov, cogently reasoned:

". . . It would be a strange kind of argument and an equivocal type of justice which would hold that the defendant would be compelled to pay out, let us say, the sum of $100,000.00 if the plaintiff had not prevented what would have been inevitable, and yet not be called upon to pay the smaller sum which the plaintiff actually expended to avoid a foreseeable disaster. That the danger to the neighborhood was one of considerable substance is evidenced by the fact that the city authorities required the nearby owners to vacate their premises for a period of 2 months.

It is folly to argue that if a policy owner does nothing and thereby permits the piling up of mountainous claims at the eventual expense of the insurance carrier, he will be held harmless of all liability, but if he makes a reasonable expenditure and prevents a catastrophe, he must do so at his own cost and expense. . . ."

Again, we agree with Aronson and Leebov that there is no logical or just reason why an insured should allow a condition on his land to result in damage to others simply to assure and secure coverage when preventive measures could prevent not only substantial damage or loss to the property of others, but also prevent sizeable claims for damages against the insured and his insurer. In both Leebov and Aronson, the insured's actions were notedly designed to save both the insured and the insurer from those claims that would have resulted in the absence of remedial measures.

In Leebov, the court spoke of "immediate and substantial measures to remedy the perilous situation" thereby preventing "disastrous consequences to adjoining properties". The court also noted that

the sums required to be paid for the preventive measures were considerably less than the insured would have had to pay if the "foreseeable disaster" was permitted to occur.

In Aronson, the court noted the "foreseeable consequences" of a failure to remedy the situation stating:

"A possibility existed that the gasoline could have infiltrated the waters or ground under a large shopping center, located across the highway, creating an explosion hazard for countless people."

That court also observed that the recovery measures taken by the insured were essential to prevent the accumulation of sizeable claims against the insurer and the insured.

We are satisfied, on the basis of the cited decisions, that the policy here involved can provide coverage in a case where the proof establishes that the spillage was "sudden and accidental" and the damage to the property of others "imminent and substantial". We therefore hold that a covered occurrence, within the meaning of the instant policy, is one in which the risk of damage or loss to the property of others is both imminent and substantial.

In this case the complaint does not allege the extent or location of the PCB spilled upon the insured's premises. We are also unable to determine from the instant complaint if, when or to what extent any injury or loss will be occasioned by others. The existence of those facts is pivotal in determining whether or not recovery is warranted under this policy. While the complaint in this case does not specifically allege any damage at present to the property of others, or that substantial damage or loss is imminent, we are satisfied that it is sufficient enough to defeat the preliminary objection in the nature of a demurrer. We agree that the complaint

could have been more artfully and more specifically pleaded, but in view of the subject matter involved, we see no reason for any further procedural delays. Accordingly, we dismiss the preliminary objection and afford the insured an opportunity to prove facts sufficient to now warrant recovery under the judicial construction we have rendered today.

We also feel a comment upon the exclusionary clauses in the instant policy would be appropriate. The insurer contends that the two cited exclusionary clauses are neither ambiguous nor equivocal and, accordingly, are susceptible to only one interpretation and that is that there is no liability coverage under these facts. We disagree.[6]

The first exclusion, that is, subsection (f), by its own terms, does not apply to a "sudden and accidental" discharge. In the instant complaint, the insured alleged that the spillage was both "sudden and accidental". Accepting this averment in the pleading as true, the exclusion would be inapplicable to the instant case.

With regard to the exclusion in subsection (k), it is our opinion that this provision only covers or applies to a situation where the damage is limited or confined to the premises owned or leased, etc., by the insured. It does not exclude coverage where the concern is not really the premises of the insured,

---

6. "Even where a policy is written in unambiguous terms, the burden of establishing the applicability of an exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him." Hionis v. Northern Mutual Insurance Co., 230 Pa. Super. 511, 327 A.2d 363 (1974). See also O'Malley v. Continental Ins. Co., 305 Pa. Super. 302, 451 A.2d 542,544 (1982).

but rather the imminent risk of substantial[7] harm to the property of others. Coverage is afforded here not for or because of damage to the property of the insured, but rather to prevent imminent and substantial damage to the property of others. If the risk of damage to others is neither imminent nor substantial, then we would not have a compensable occurrence within the coverage provision of this policy. The risk insured against in this case is essentially damage or harm to the property of others, and the risk which we have considered and now desire to cover is again the property of others and not the property of the insured. In any event, we are satisfied that this exclusionary clause is susceptible of various interpretations and, accordingly, it should be construed as we now do in favor of the insured. Cohen v. Erie Indemnity Co., 288 Pa. Super. 445, 432 A.2d 596 (1981).

Again, we have not determined that the insured is entitled to recover in this case. That determination requires the presentation of factual evidence to bring the case within the judicially construed coverage of this policy. We also note again that we are not requiring an insurer to pay an insured to clean his own back yard. Our construction of the policy is nothing more than a judicial recognition of reality. If damage to others is imminent and substantial, it would be unreasonable and unjust to require actual damage or loss before affording coverage. Contrary

---

7. Whether damages are substantial requires a comparison of the cost of prevention with the possible cost of the third party damage claim. Thus, if the anticipated damage to adjoining property is substantially less than the cost of remedial measures on the insured's premise, then the claim may not be substantial. Each case must be measured on its own particular facts and circumstances.

to the insurer's argument that this construction is both strained and tortured, we find it both logical and just and also in accordance with the decisions in Aronson and Leebov.

Accordingly, we enter the following

## ORDER

It is hereby ordered, adjudged and decreed that the preliminary objections of Selected Risks Insurance Company are overruled.