## Purdy v. Commercial Union Insurance Company of New York

*Jon L. Friedman*, for plaintiffs.

*Robert W. Murdoch*, for defendant.

SILVESTRI, J., June 8, 1970.—Defendant, Commercial Union Insurance Company of New York, has filed a motion for summary judgment under Pa. R. C. P. 1035. Defendant and plaintiffs are in substantial agreement regarding the facts of this case.

Plaintiffs were named as insureds under a homeowner's policy of insurance issued by defendant. On February 19, 1968, plaintiff, Robert Purdy, was in Chicago, Ill., on a business trip when a suitcase containing certain items of his personal property was taken from his rented, unattended automobile.

A claim was made by plaintiffs under the policy, which claim was denied by defendant.

Plaintiff filed this lawsuit against defendant for the value of the personal property which was taken from his car. Defendant has set forth in new matter a defense predicated upon the following provision of the homeowner's policy covering exclusions for theft of property away from the homeowner's described premises:

"*This policy does not apply as respects this peril to loss away from the premises of:* (a) property while in any dwelling or premises thereof, owned,

rented or occupied by an insured, except while an insured is temporarily residing therein; *(b) property while unattended in or on any automobile,* motorcycle or trailer, other than a public conveyance, *unless the loss is the result of forcible entry* either into such vehicle while all doors and windows thereof are closed and locked or into a fully enclosed and locked luggage compartment, *of which entry there are visible marks upon the exterior of said vehicle."* (Italics supplied.)

Plaintiffs admitted, in reply to this new matter, that "there were no visible marks of the forcible entry upon the exterior of said vehicle," but denied that such marks were required to be shown for plaintiffs to recover or that the said policy provision is an enforceable exclusion from coverage.

Plaintiffs contend that their insurance policy was not a freely negotiated contract, but rather a contract of adhesion,[1] and further, that the "exterior marks" clause is not a risk limitation and is contrary to public policy.

Defendant, on the other hand, rests its case on the alleged clear and unambiguous terms of the contract itself, and asserts that the exclusion here involved clearly establishes a condition precedent to recovery, which was admittedly not met in this case.

The insurance policy here involved, attached to plaintiffs' complaint as exhibit B, is a nine-page, double-column document. The insuring clause for the property here involved appears on the fifth page of this contract, as follows:

---

[1] Plaintiffs cite the following in their brief relating to a contract of adhesion: " 'The distinguishing feature of adhesion contracts is lack of negotiation—the imposition of terms by the drafting party upon the adhering party. Its cause is frequently disparity in economic power between the parties . . . ,' The Form 50 Lease: Judicial Treatment of an Adhesion Contract, 111 U. of Pa. L. R. 1197, at 1205-06 (1963)."

"Coverage C.—Unscheduled Personal Property . . . 2. Away from premises: This policy also covers unscheduled personal property as described and limited, while elsewhere than on the premises, anywhere in the world, owned, worn or used by an insured or at the option of the Named Insured, owned by a guest while in temporary residence of, and occupied by an Insured or owned by a resident employee while actually engaged in the service of an Insured and while such property is in the physical custody of such residence employee or in a residence temporarily occupied by an Insured. Property pertaining to a business is not covered.

"The limit of this Company's liability for such property while away from premises shall be an additional amount of insurance equal to 10% of the amount specified for Coverage C, but in no event less than $1,000."

Also listed on the fifth page of this insurance contract are "Perils Insured Against." These provisions carry over to the sixth page of the contract, where the exclusion in question appears. Both of these provisions herein mentioned are in the usual very small, difficult-to-read type, typical of the entire nine-page policy.

It is our opinion that where an insurance policy is sold to an ordinary individual it is a "contract of adhesion." The effect of this, "where one of the parties is in a disadvantageous bargaining position because the provisions are standardized and stereotyped" [2] is to construe the contract most narrowly

---

[2] 4 Williston on Contracts §626, at 855-57 footnote 12 (1961). Williston states that "This type of contract is illustrated by the typical insurance policy, whether life, fire, indemnity or casualty, virtually all of which have certain standard provisions worked out by the insurance companies over the years to restrict their liability and the coverage afforded." See also, Id., Supp., n. 11 at page 31 (1969) where it is stated that "The term 'contract of adhesion'

against the writer.

In the case of Eastcoast Equipment Company v. Maryland Casualty Company, 207 Pa. Superior Ct. 383, 218 A. 2d 91 (1966) (per curiam opinion affirming on the opinion of the lower court reported at 38 D. & C. 2d 499), footnote 10, the Pennsylvania Superior Court points out that "An insurance policy, is, in general nature, a 'contract of adhesion,' where the purchaser has no bargaining power, and thus the policy must be construed strictly against the insurer." In connection with this footnote, the court states in the text of its opinion the following:

"Were this case between an individual who purchased the policy through a subway advertisement, e.g., and a giant insurance company, there might be good reason to construe the clauses very strictly, and in case of the slightest doubt, against the insurer. The policy behind this rule is sound: the insurer wrote the policy and the individual purchaser is concerned primarily with monetary benefits. Concern with definitional clauses and exclusions is minimal; therefore, if they do become material, they should be strictly construed against the insurer.

"There would be little purpose in hewing to legal platitudes with no application, where one large corporation and one large insurance company, both advised by competent legal counsel, do business with each other.[3]

. . . was introduced into Anglo-American jurisprudence by Edwin W. Patterson in 1919 (Patterson, The Delivery of a Life-Insurance Policy, 33 Harv. L. Rev. 198, 222), and since has become common in legal writing. It is gradually finding its way into judicial opinions."

[3] In footnote 11, the court adds: "Insofar as the intent of the parties is ascertainable, it should be followed: premiums are paid with certain coverage contemplated. The only indicia of intent in this case is the policy. It was entitled 'Comprehensive,' but contained an exclusion of 'Products Hazard.' Thus we can only pre-

"This is not to say that the interpretation of insurance policies should vary according to the sophistication of the purchaser, but only that legal realism demands that the adjudication of disputes arising out of policy language be based upon principles with more than ephemeral connection to the facts."

As between an individual and an insurance company, since the standard policy is a contract of adhesion, an exclusion to comprehensive coverage therein is not to be enforced, even though in unambiguous terms, unless it be proved that the insured was aware of the exclusion, and that the effect of the exclusion was explained to him. The insured's intention in entering into such a contract must be proved, and the burden of such proof is on the insurer.

The court takes judicial notice that the sale of this type of insurance is big business, and that purchasers most frequently do not read the fine print. These are long involved contracts, with many technical provisions, some of which even the selling agents and the more sophisticated do not understand. This policy recites that it "covers unscheduled personal property . . . anywhere in the world," with certain stated limitations. The same provision further provides an exclusion for "property pertaining to a business." And finally, the company limits its liability for such property while away from premises to an additional amount of insurance equal to 10 percent of the amount specified, but in no event less than $1,000.

Although spelling out in all this detail the coverage and limitations on coverage for unscheduled personal property "anywhere in the world," the insurer adds yet another exclusion, the one here in question, but this

sume that Eastcoast thought it was getting broad coverage, but with some limitation because of the exclusion. This observation, however, in no way solves this case. The problem here depends on a legal interpretation of the exclusion clause."

time on a separate page.

We do not intend to treat the individual plaintiff any differently from the large corporate plaintiff. The burden of proof, in either event, is on the party asserting the exclusion to prove not only its applicability, but its understanding by the party against whom the exclusion is sought. As with any other contract situation, if there is no meeting of the minds on the terms of the contract, there is no contract. If it be shown, in the case of a large corporation, that the insurance contract went, along with all the other contracts entered into by the corporation, to the corporate attorneys for examination before signing, then it may be reasonably concluded by the court that the exclusion was known to exist and understood as applying to any given situation. However, in the case of an individual, construing this contract of adhesion strictly against the insurer, unless it be shown by the insurer that the insured was made aware of this exclusion and its effect on his coverage at the time of purchase of the policy, we will not enforce it as a part of the bargained-for agreement.

Consequently, we are denying defendant's motion for summary judgment. Plaintiffs can now go to trial with their proof of loss, with the burden on the insurer to show that plaintiffs knew at the time of purchase that they were obtaining certain insurance coverage, with the alleged exclusion. Then, if the fact-finder is convinced of plaintiffs' awareness and understanding of the exclusion, under the appropriate instructions, the exclusion can be applied to deny plaintiff coverage.

If insurance companies find this procedure too burdensome, it would be no great difficulty for them to take the necessary time to fully inform purchasers in simple language, if printed, easily readable, exactly

what the purchaser is buying. The purchase of insurance contracts should not be governed by the maxim of "caveat emptor," but rather by the same mutuality of understanding as governs any other contract situation.

## ORDER

And now, June 8, 1970, upon consideration of defendant's motion for summary judgment and the briefs and arguments of the parties in regard thereto, it is ordered, adjudged and decreed that defendant's motion for summary judgment be and the same is hereby denied.