Hionis *v.* Northern Mutual Insurance Company
et al., Appellants.

Argued June 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Peter A. Dunn,* with him *Fronefield, deFuria & Petrikin,* for appellants.

*Rodger L. Mutzel,* with him *Kassab, Cherry & Archbold,* for appellee.

OPINION BY HOFFMAN, J., September 23, 1974:

This is an appeal from a directed verdict in favor of the plaintiff for damages recovered under two insurance policies for fire loss.

On July 13, 1970, the plaintiff-appellee was the lessee of premises located at 625 Welsh Street in the City of Chester, where he was trading under the name of the Welsh Restaurant. On that date, the restaurant was destroyed by fire, together with its contents, improvements and fixtures. Plaintiff gave prompt notice of his loss to the defendant insurance companies demanding payment of full coverage under the combined policies.[1] Despite combined coverage of $49,500.00, defendants denied liability for the full amount and tendered the sum of $12,733.86 as their estimate of the amount owed. Payment was refused, and suit was instituted in the Court of Common Pleas of Delaware County. On March 19, 1973, the case was tried before the Honorable C. Norwood WHERRY and a jury.

The plaintiff introduced the insurance policies to evidence improvements and betterments coverage in the amounts claimed. Defendant did not contest the policy limits but maintained that since plaintiff did not repair or replace the improvements destroyed in the fire, he was entitled only to a proportionate amount of the cost of said improvements. The controversy centered around the following relevant portions of the policies:

"*(E) Improvements and Betterments Coverage:*

"(Applies only when insured is not the building owner) When the insurance under this policy covers Improvements and Betterments, such insurance shall

---

[1] On May 14, 1969, Northern Mutual executed and delivered a policy of fire insurance to the plaintiff, providing coverage of $30,000.00 in improvements and betterments for the Welsh Restaurant. A similar policy was delivered by Nationwide on December 30, 1969, in the amount of $19,500.00 for improvements and betterments.

cover the insured's use interest in Improvements and Betterments to the described building.

"(1) The term 'Improvements and Betterments', wherever used in this policy, is defined as fixtures, alterations, installations, or additions comprising a part of the described building and made or acquired at the expense of the insured, but which are not legally subject to removal by the insured.

"(2) The word 'Lease' wherever used in this policy, shall mean the lease or rental agreement, whether written or oral in effect as of the time of loss.

"(3) In the event improvements or betterments are damaged or destroyed during the term of this policy by the perils insured against, the liability of this company shall be determined as follows:

"(a) If repaired or replaced at the expense of the insured within a reasonable time after such loss, the actual cash value of the damaged or destroyed improvements and betterments;

"*(b)  If not repaired or replaced within a reasonable time after such loss, that portion of the original cost at the time of installation of the damaged or destroyed improvements and betterments, which the unexpired term of the lease at the time of the loss bears to the period(s) from the date(s) such improvements and betterments were made to the expiration date of the lease;*

"(c) If repaired or replaced at the expense of others for the use of the insured, there shall be no liability hereunder." (Emphasis added).

Having failed to replace the damaged improvements to the leased premises, the appellants argue that the plaintiff was only entitled to $12,733.86, the fair and reasonable value of the improvements and betterments in terms of the remaining "use interest" under clause (E)(3)(b). That clause, appellants argue, entitles the plaintiff only to a proportion of the original cost of the

improvements as measured by the "unexpired term of the lease at the time of the loss." Appellants further argue that plaintiff would only be entitled to the replacement cost up to the limits of the policy if he had "repaired or replaced . . . [the improvements or betterments] within a reasonable time after such loss . . . ." (E) (3) (a). The insured plaintiff offered evidence to show that he had made vain efforts to obtain the necessary financing to replace the destroyed facilities.

In its Opinion, the court en banc sustained the trial court's dismissal of the appellants' post-trial motions by finding the plaintiff's situation to be inapplicable to either clause in the policies. The court held: "The impermissible position of the defendants that the policy language permitted them to withhold the full policy benefits without which the business could not be resumed and then to maintain that since the business was not resumed that only a pro rata portion of the benefits are payable is against public policy." The lower court was careful to note that if the evidence had clearly demonstrated that the policy limitations and exclusions were the product of the parties' true intentions, the appellants' position would have been unassailable.

The trial record discloses the following to have been the atmosphere in which the insurance contracts were negotiated and secured: Plaintiff called four witnesses in his case-in-chief. First, plaintiff himself testified that he was already insured for the contents of the restaurant on the date when defendant Nationwide's exclusive agent visited the premises. James E. Parkinson, a long-time patron of the Welsh Restaurant, told the plaintiff that he was under-insured, and that as a result of the improvements he had made in the restaurant since 1962, increased coverage was desirable. The plaintiff, unschooled in insurance matters, entrusted the entire situation in Parkinson's hands, stating that he asked only that the new policy cover him for loss to the

improvements since his expense had been considerable. Parkinson then entered into negotiations with Alan Swimmer, agent for defendant Northern Mutual. Mr. Swimmer, who was also a patron of the restaurant on a weekly basis for a period extending over 20 years, joined in Parkinson's recommendation that the figure of $49,500.00 should serve plaintiff's minimal purpose.[2] Acting upon those recommendations, plaintiff accepted the new policies with Nationwide and Northern Mutual for a combined improvements and betterments coverage of $49,500.00. Both Mr. Parkinson and Mr. Swimmer were called as witnesses and corroborated the circumstances under which the insurance policies were obtained.

At the conclusion of plaintiff's case, defendants chose not to present any evidence and rested upon the terms of their respective policies. Judge WHERRY thereupon granted plaintiff's motion for a directed verdict. A court en banc heard post-trial motions, and on January 4, 1974, denied the motions. This appeal followed.

Insurance contracts have been viewed under the law as contracts of "adhesion", where the insurer prepares the policy for a purchaser having no bargaining power. Where a dispute arises, such contracts are construed strictly against the insurer. *Eastcoast Equipment Company v. Maryland Casualty Company,* 207 Pa. Superior Ct. 383, 218 A. 2d 91 (1966). In *Eastcoast,* we affirmed the decision of a court en banc on the basis of the lower court opinion which provided in part: "The policy behind this rule [construction against the insurer] is sound; the insurer wrote the policy, and the individual purchaser is concerned primarily with monetary benefits. Concern with definitional clauses and

---

[2] On direct examination, Mr. Swimmer conceded that the plaintiff could be characterized as a "reluctant buyer", tending to underinsure himself rather than seek maximum coverage.

exclusions is minimal; therefore, if they do become material, they should be strictly construed against the insurer." 38 Pa. D. & C. 2d at 511. When a defense is based on an exception or exclusion in a policy, our Supreme Court has held that such a defense is an affirmative one, and the burden is upon the defendant to establish it. *Weissman v. Prashker,* 405 Pa. 226, 233, 175 A. 2d 63 (1961). Even where a policy is written in unambiguous terms, the burden of establishing the applicability of an exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him. See, e.g., *Frisch v. State Farm Fire and Casualty Co.,* 218 Pa. Superior Ct. 211, 275 A. 2d 849 (1971); *Purdy v. Commercial Union Insurance Co. of New York,* 50 Pa. D. & C. 2d 230, 235 (1970).

The plaintiff herein was a layman of apparently average intelligence whose only objective in obtaining insurance was the security of protecting the financial expenses he had incurred in furnishing, improving and bettering the leased premises. His corroborated testimony indicates full trust in the agent's accomplishment of those purposes. The defendants opted to present no evidence. We do not believe that under the circumstances defendants could stand behind a policy limitation or exclusion without meeting the burden of proof of establishing the insured's understanding and intention to become so bound. Furthermore, when the language is read in a vacuum it is couched in technical and unclear terms; and, when the disputed clause (E) (3) and its subsections are read along with the Co-Insurance Provisions in the subject policies, greater confusion as to the coverage owing a claimant for total loss is apparent. We hold, therefore, that because defendants failed to offer any proof of the insured's awareness and understanding of the exclusions in the policies, that the policies must be construed in favor of the

insured. *Evans v. Baltimore Life Insurance Co.*, 216 Pa. Superior Ct. 425, 268 A. 2d 155 (1970) ; *Weissman v. Prashker,* supra. Having received credible testimony that described the atmosphere surrounding the execution of the insurance policies, the lower court properly directed a verdict in favor of the plaintiff when the defendants chose not to present any evidence to contradict or detract from the version given by the plaintiff.

Appellants also contend that even should the trial court's finding of liability be sustained, the court erred in determining the amount of the verdict. It is their contention that the matter of damages should be a jury question, and that usurpation of that function is reversible error. This argument appears before this Court for the first time. Defendants did not object during the course of the trial when the trial court endeavored to fix the amount of the verdict; nor, did the defendants raise the issue in post-trial motions. However correct defendants' legal position may be, we shall not disturb the trial court's verdict where timely objection was not made, and the issue is now raised as grounds for reversal. The recent decision of *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A. 2d 114 (1974) lays to rest the "basic and fundamental error" test in all civil cases, holding that failure to object or raise the matter below constitutes a waiver for purposes of appeal. See also *Zeman v. Canonsburg Borough,* 423 Pa. 450, 223 A. 2d 728 (1966).

Appellants' final contention raises the question of the excessiveness of the verdict. Having considered the evidence appearing in the notes of testimony, we conclude that the verdict, which amounted to the full coverage under the combined policies, was adequately supported. Plaintiff testified that he had spent over $70,-000.00 to install the improvements and betterments in the restaurant. Plaintiff claimed that he had spent approximately $28,000.00 to paint and renovate the prem-

ises himself. Requiring additional work, he called John Mercadante, Jr., a contractor and builder. Mr. Mercadante, who appeared on behalf of the plaintiff, testified that he was hired in 1961-2 to make certain "improvements". He proceeded to list the specific items of work and stated that the cost had been $50,600.00 for his labor and costs. He added, however, that to duplicate or replace the same work would have cost at today's prices approximately $100,000.00.

Both Parkinson and Swimmer, insurance agents for the defendants, testified that the plaintiff was a "reluctant buyer" and that the coverage obtained by the plaintiff had not been adequate. When asked if Mr. Hionis was entitled to the full coverage under the policy, Mr. Swimmer, a customer of the Welsh Restaurant for over 20 years, responded: "In my opinion, all and then some. I don't think he really had enough insurance." On cross-examination, defense counsel followed this line of questioning: "Q. Your last statement confused me, Mr. Swimmer. You are not saying that the plaintiff is entitled to more, even when he is not insured for more? A. No. It is just that, if he was paid all of the amount of the insurance policy, I still feel, based upon what I saw, that he would not have been compensated for his total loss. That is, actual loss was in excess of the total amount of insurance."

We, therefore, affirm the order of the court below.

JACOBS, J., would affirm on the opinion of Judge JEROME, of the court below.