## Buckich v. Gibbs

*Bernard Goldstone*, for plaintiff.
*Anna Belle Jones*, for defendant.
*Donald R. McKay*, for garnishee.

ACKER, *J.*, October 18, 1976 — Through a writ of execution by plaintiff against defendant, Gibbs Paving, and garnishment against Rockwood Insurance Company, this matter comes for determination. Testimony was taken without a jury from which this court concludes the following facts:

(1) Plaintiff, Buckich, recovered a verdict against defendant, Benjamin F. Gibbs, trading as Gibbs Paving, in the total amount of $18,940. for damages to his building as a result of demolition operations by defendant in the City of Farrell, Mercer County, Pennsylvania.

(2) The verdict was sustained on May 23, 1975 and appears at 142 March Term, 1974, judgment having been entered thereon at no. 749 D.S.B., 1975.

(3) The pleadings in the case consist of written interrogatories addressed by plaintiff to the garnishee and the answers thereto pursuant to Pa. R.C.P. 3145.

(4) Defendant entered into a contract with the City of Farrell pursuant to public bidding for the demolition of approximately 32 separate properties in that city. By article VIII, Gibbs was required to certify that he carried general liability insurance coverage for his operations, and specifically the type of work performed under his agreement, being not less than $50,000 damage to property and $100,000 — $300,000 for injury to person or persons. The contractor was required to furnish certificates of insurance.

(5) Plaintiff's building was located immediately south of the building being pulled down by defendant. When the damage occurred, the south wall was being pulled by a cable attached to a bulldozer. Bricks came loose from the upper portion of the north wall and fell upon plaintiff's building causing damage as concluded by the jury through its verdict. There is no allegation or proof that defendant intentionally caused damage to plaintiff.

(6) Defendant, in connection with his bid, traveled to Pittsburgh and met with representatives of Surety Underwriters, Inc. He submitted specifications for the Farrell contract as well as a financial statement telling them that he wanted full coverage for the Farrell job.

(7) A copy of the contract between himself and

the City of Farrell for the job, being plaintiff's exhibit 3, was delivered to the insurance agency prior to a copy of the policy being delivered to him.

(8) Surety Underwriters then secured a Bid and Performance Bond form covering the Farrell job and as far as the defendant knew provided "complete liability and property damage for the entire job."

(9) Gibbs was sent by defendant, insurance company which actually wrote the policy for Security Underwriters, Inc.

(10) After the loss, defendant company then sent to the City of Farrell a copy of the policy[1].

(11) The policy issued by Rockwood to defendant and to the City of Farrell fails to include page three, being an amendment of declarations. That page provided "wrecking buildings or structures — not marine — including salesmen or clerical on site of wrecking 3451 SXC specific charge bodily injury $640 property damage $1920."

(12) It was never explained to defendant Gibbs that there was an exclusion eliminating coverage for wrecking buildings or structures and he was unaware of any alleged exclusion for an occurrence such as brought this matter before the court.

(13) Defendant Gibbs had secured wrecking insurance on other occasions on some jobs, paying extra to remove the exclusion.

(14) The premium initially quoted by Rockwood

---

1. The coverage alleged to exist in the certified policy of Rockwood to the City of Farrell has a different bodily injury liability being $300,000 instead of $100,000 as set forth in plaintiff's exhibit 1. In addition, there is a difference as to the aggregate coverage between plaintiff's exhibits 1 and 7, for in plaintiff's exhibit 1 issued to Gibbs, the aggregate coverage is $50,000, while that sent to the City of Farrell is $100,000.

was $3,200 but after negotiations it was reduced to $2,560 and eventually was accepted by Gibbs.

(15) There was no specific charge presented to Gibbs for the removal of a collapse exclusion.

(16) To remove the collapse exclusion, according to Rockwood, there must be a specific request, a detailed inspection and an additional premium.

(17) The policy issued to Gibbs, the copy sent to the City and the copy from the files of the insurance company all contain a listing of properties which were scheduled to be demolished with the language "additional premium $2,560 (included in policy). It is understood and agreed that the premium for which this endorsement is written is fully earned as of endorsement effective date.

"It is further understood and agreed that this policy is restricted to cover wrecking and demolition operations of the insured and employees of the insured at the following locations (follows 32 specific locations including that involved in this case)."

## DISCUSSION

The general rule governing the construction of insurance policies is well settled. "An insurance policy is to be construed most strongly against the insurer and liberally in favor of the insured so as to effect the dominant purpose of indemnity or payment to the insured, but this is where the terms of the policy are ambiguous or uncertain and the intention of the parties therefore unclear (cases cited).": Miller v. Prudential Insurance Company of America, 239 Pa. Superior Ct. 467, 362 A.2d 1017, 1020 (1976). The burden is upon the insurer to establish the exclusion. Further, any ambiguity in the contract of insurance must be re-

solved in favor of the insurer: Weissman v. Prashker, 405 Pa. 226, 175 A.2d 63 (1961).

Our Superior Court has established the rule that because insurance contracts are viewed as contracts of "adhesion" and because the concern of the insured as to exclusions is usually minimal, it is the obligation of the insurer to bring to the insured's attention the existence of the exclusion and at the time of trial to offer proof of the insured's awareness and understanding of the exclusion in the policy: Hionis v. Northern Mutual Insurance Company, 230 Pa. Superior Ct. 511, 327 A. 2d 363 (1974). Admittedly, in Hionis, supra, the insurer elected to put in no evidence. An effort is made to distinguish *Hionis* in the instant case due to the prior dealings of the insured with other companies concerning such insurance. We believe Hionis, supra, still controls. A reasonable interpretation of the endorsement contained in the policy issued to defendant and the city, considering that plaintiff requested full coverage and believed he was getting it, would be that the endorsement contained in his policy restricting coverage to the 32 named properties required no additional premium.[2] Hionis, supra, was recently interpreted in Miller v. Prudential Insurance Company of America, supra, and under the facts held not to control. Miller, supra, is a health and accident policy case where plaintiff had Blue Cross and Blue Shield. Plaintiff's intent in securing the policy was to expand coverage and not to duplicate it.

2. Daburlos v. Commercial Insurance Company of Newark, New Jersey, 521 F.2d 18 (3rd Cir. 1975), applied the Hionis, supra, rule even when the policy was clear and unambiguous because of a limited time a customer has in an airport to read the policy to learn of an exclusion.

Further, the application of the policy required disclosure of other medical insurance, putting the insured on notice of the possibility of a deduction for identical medical expenses. The language of the policy was declared to be clear and unambiguous as to deductions for other existing policies. Finally, the lower court found that the policy clearly called to the insured's attention the existence of a deductibility of other medical expense benefits. In discussing Hionis, supra, the court in Miller, supra, distinguished Hionis, noting plaintiff was a layman of apparent average intelligence and his object in obtaining the insurance was the security of protecting the financial expenses he had incurred in improving his leased premises. His testimony indicated full trust in the agent's representations. The disputed clause was couched in technical and unclear terms.

In the instant case, without the missing page three upon which the insurance company relied apparently down to the time of trial when it was first discovered as missing, a knowledgeable layperson would have extreme difficulty in a determination of coverage. This is due to the failure to set forth the key letters C or R which the insurance company says must be looked to. Neither endorsement C0108 nor C0109 contains the magic letters. It would appear that C0108 excludes any coverage for any loss from any wrecking operation unless the company accepts it. At least, Gibbs would not be covered for any loss resulting from paving roads (Form S6503AB Liability Hazards) which included a wrecking operation notwithstanding the endorsement Form L6432b granting coverage with specific exclusions. On the other hand, endorsement Form C0109 grants

coverage for specific wrecking operations at 32 sites without mentioning any specific exclusions. All of the endorsements and additional coverage referred to through S6503AB, 9532BB, L6432b, L9187, C0109, C0108 and C0160 are stated in the policy as included in the advance premium of $2,560. In Form L6432b known as Application of Exclusion, it is represented it applies as an endorsement modifying such insurance as is afforded for Manufacturers' and Contractors' liability.The printed language therein states "it is agreed that if the named insured's actual operations include any operation(s), whether or not stated in the Schedule under 'Description of Hazard', which is described by any classification listed below, the 'X', 'C', 'U' symbol(s) included in the applicable code number shall apply as if such classification code number and symbol(s) were included in such Schedule. Premium adjustment, if any, to be made at end of Audit Period." Contained thereunder in "Wrecking" is "Wrecking Buildings or Structures — not marine — including salesmen or clerical at site of wrecking." It would appear to a lay person the insurer reserved the right to reevaluate the insured's premium for the next period of coverage. When combined with C0109, without the missing page 3, a lay person would be led to believe coverage did exist for wrecking.

It is the conclusion of this court that due to the uncertainty of the insurance contract and of the failure of defendant to establish the insured knew of the contended exclusion, plaintiff is entitled to recover the amount of its judgment with interest against Gibbs under the policy.

## ORDER

And now, October 18, 1976, it is hereby ordered

and decreed that the previous order of October 13, 1976 is vacated.

Pursuant to Pa.R.C.P. 1038, a verdict is found in favor of Joseph Buckich, plaintiff, upon his attachment against Rockwood Insurance Company in the amount of $18,940, with interest at the rate of six percent simple from May 23, 1975, to the date of this order, being in the amount of $1,589.84, being a total finding in favor of plaintiff, Joseph Buckich, in the amount of $20,529.84 and against garnishee, Rockwood Insurance Company.

The Prothonotary shall notify all parties or their attorneys of the entry of this verdict.

Within 20 days after notice of the filing of the decision exceptions may be filed by any party to the decision or any part thereof to rulings on objections, evidence or to any other matters occurring during the trial. Exceptions shall be filed pursuant to the provisions of Pa.R.C.P. 1038. Prior to final judgment, leave is granted to file exceptions raising these matters.