Bessie M. McCLANEY, Individually and as guardian ad litem of Grady M. McClaney, Plaintiffs,

v.

UTILITY EQUIPMENT LEASING CORPORATION, Reuben-Siegfried Chauffeurs, Inc., Gallagher Equipment and Leasing Co., Gallagher Equipment Company, foreign corporations, and Albert J. Molchan, jointly and severally, Defendants.

GALLAGHER EQUIPMENT AND LEASING CO. and Gallagher Equipment Company, Third-Party Plaintiffs,

v.

NIAGARA MOHAWK POWER CORPORATION, Third-Party Defendants.

GALLAGHER EQUIPMENT AND LEASING CO. and Gallagher Equipment Company, Fourth-Party Plaintiffs,

v.

NEW HAMPSHIRE INSURANCE COMPANY, American International Adjustment Company, Inc., Snyder Moore Agencies, Inc., Schumacher Agency and John Lafferty, jointly and severally, Fourth-Party Defendants.

No. 82–CV–79.

United States District Court, N.D. New York.

April 1, 1983.

1266

See also D.C., 560 F.Supp. 1270.

Sanford Rosenblum, Albany, N.Y., for plaintiffs; Eric P. Von Wiegen, Schenectady, N.Y., John K. Powers, Albany, N.Y., of counsel.

Carter, Conboy, Bardwell, Case & Blackmore, Albany, N.Y., for defendant Utility Equipment; Randall J. Ezick, Albany, N.Y., of counsel.

DeGraff, Foy, Conway, Holt-Harris & Mealey, Albany, N.Y., Dante Renzulli, Personal Counsel, Exton, Pa., for Gallagher Equipment & Leasing and Gallagher Equipment; David F. Kunz, Albany, N.Y., of counsel.

Ainsworth, Sullivan, Tracy & Knauf, Albany, N.Y., for defendant Reuben-Siegfried; John E. Knauf, Albany, N.Y., of counsel.

Joseph Cleary, Gen. Counsel, Lyons, Pentak, Brown & Tobin, Albany, N.Y., for Niagara Mohawk; Kevin P. Glasheen, Albany, N.Y., of counsel.

Bond, Schoeneck & King, Albany, N.Y., for Snyder Moore Agencies, Schumacher Agency and John Lafferty; David Sheridan, Albany, N.Y., of counsel.

Welt Stockton & Associates, Delmar, N.Y., Hesson, Ford, Sherwood & Whalen, Albany, N.Y., Parisi, De Lorenzo, Gordon, Pasquariello & Weiskoff, Schenectady, N.Y., for defendants, New Hampshire Ins. & American Intern.; Michael A. Sims, Delmar, N.Y., Daniel Whalen, Albany, N.Y., Edward D. Falso, Schenectady, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

This action arose from an accident which occurred in Albany, New York on December 22, 1981, when a truck driven by Albert J. Molchan struck a Niagara Mohawk Power Corporation building, causing an explosion within the building which injured the plaintiff. The truck, owned by Utility Equipment Leasing Corp., had been leased to Gallagher Equipment Leasing Co., Inc., which in turn had leased it to Niagara Mohawk Power Corporation. Gallagher retained Reuben-Siegfried Chauffeurs, Inc., to retrieve the truck from Niagara Mohawk's premises, and Molchan, an agent of Reuben-Siegfried, was in the process of retrieving the truck when the accident occurred. Suit was commenced on January 26, 1982 by Bessie McClaney, individually and as guardian ad litem of Grady M. McClaney, the injured party. Federal jurisdiction is based upon diversity of citizenship.

On February 22, 1983, this Court entertained three summary judgment motions which raised the same question: whether an insurance policy issued by fourth-party defendant New Hampshire Insurance Company, Inc., to defendant Gallagher Equipment Company, Inc., covers Gallagher's liability in this lawsuit. At the close of oral argument the Court granted the motions by Gallagher and Snyder Moore Agencies, Inc., et al., for summary judgment, declaring that the New Hampshire policy offered coverage to Gallagher here; and denied the motion by New Hampshire Insurance Company, Inc., for summary judgment for contra relief. This Memorandum constitutes the Court's decision and order herein.

Gallagher Equipment Company, Inc., applied for the policy, through the Snyder Moore Agencies, Inc., in 1980. The original application described Gallagher's operations as "Sales and Service Hydraulic Equipment". The policy issued was a "Garage Liability Policy" providing coverage in the amount of $100,000/person; $300,000/occurrence. The period of coverage was from February 1980 through February 1981.

Upon expiration, Gallagher obtained a renewal policy, which differed slightly in language from the previous policy, and which provided the same dollar coverage for February 1981 through February 1982. This policy, which was in effect at the time of the accident, states in Part IV A 1:

> We (New Hampshire Insurance Company) will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies caused by an accident and resulting from garage operations.

Part I F of that policy defines "garage operations" as follows:

> "Garage Operations" means the ownership, maintenance or use of the locations stated in the declarations and that portion of the roads or other accesses that adjoin these locations for garage business. *Garage operations includes the ownership, maintenance or use of the autos indicated in Part II as covered autos.* Garage operations also include all operations necessary or incidental to a garage business.

(emphasis added).

The parties agree that, under Part II of the insurance policy, Gallagher's coverage extended to "any auto" (as opposed to only autos owned by the insured); and includes the vehicle involved in this accident.

The policy also contains the following exclusions, which are relied upon by the insurer in disclaiming coverage:

> C. WE WILL NOT COVER—EXCLUSIONS This insurance does not apply to:
>
> 1. Liability assumed under any contract or agreement....
>
> 7. Any covered auto while leased or rented to others....

In June of 1981, prior to the accident, Gallagher obtained an "additional interest endorsement" affording policy coverage to four additional insured, including Gallagher Equipment Leasing Co., Inc., which is a co-defendant in the first-party action.

Upon the commencement of the McClaney's lawsuit, Gallagher notified American

International Adjustment Company, Inc. ("AIAC"), the authorized agent for New Hampshire, and provided AIAC with various documents and statements relevant to the question of coverage. During the next ten weeks, AIAC neither admitted nor disclaimed coverage, though internally they were clearly considering disclaiming. Nevertheless, they did engage counsel to appear on behalf of Gallagher, first in state court and then in this federal court action.

On March 24, 1982, AIAC sent Gallagher a disclaimer of coverage in which it mistakenly relied upon the language of the superceded 1980–81 policy. However, the exclusions relating to contractual liability and auto-leasing are substantially the same in both the 1980–81 and 1981–82 policies, and the Court fails to discern any prejudice to the insured from this clerical error in the disclaimer notice. It therefore declines to base its decision as to coverage on a theory of estoppel due to AIAC's technically incorrect notice of disclaimer. Instead, the Court bases its decision on the language of the policy and the circumstances surrounding its issuance.

Preliminarily, there is a choice-of-law issue which must be resolved. Gallagher has argued that New York law governs the validity and effect of the insurance agreement, because the pretrial deposition of New Hampshire's representative, Theodore Thomas, indicates that the policy was "serviced out of New York City". Apparently Gallagher favors the application of New York law in order that it may then invoke New York Insurance Law § 167, subd. 8, which conditions the effectiveness of a disclaimer on it being sent to the insured "as soon as is reasonably possible".

Snyder Moore Agencies, Inc., et al., maintain that Pennsylvania law governs the construction of the policy and the insured's duties with respect to the issuance of the policy, since the insureds are Pennsylvania Corporations with their principal places of business in Pennsylvania, and the policy was delivered in Pennsylvania.

New Hampshire has submitted briefs which assume the application of either New York or Pennsylvania law. However, at oral argument the suggestion was made that New Hampshire law might apply, on the grounds that the insurer is a New Hampshire Corporation.

■ Applying as we must the New York choice-of-law rules, *Klaxon v. Stentor Electric Mfr. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), we note that New York would apply the law of the state "which the parties understood would be the principal location of the insured risk and the one most intimately concerned with the outcome of litigation". *Colonial Penn Insurance Co. v. Minkoff,* 40 A.D.2d 819, 338 N.Y.S.2d 444 at 445 (1st Dept.1972); *see also, Steinbach v. Aetna Casualty and Surety Co.,* 81 A.D.2d 382, 383, 440 N.Y.S.2d 637 (1st Dept.1981); *Gladstone v. Fireman's Fund Ins. Co.,* 536 F.2d 1403, 1406 n. 4 (2d Cir.1976). There is little doubt but that in this instance the significant contacts are with Pennsylvania. The policy application was. filed there, the policy was delivered there, the insured is domiciled there, the parties had to conclude that the risk under a "garage policy" would necessarily be primarily located there (even though this particular accident happened to occur out of state), and the insurer was licensed to sell and did in this instance sell the policy in accordance with the Pennsylvania insurance law. Accordingly, the law of Pennsylvania will govern the. construction of the policy, and the legal implications attendant upon the circumstances surrounding the issuance of the policy.

■ Coverage under the policy depends initially on whether Gallagher's use of the vehicle at the time of the accident falls within the scope of "garage operations" within the meaning of the policy. As pointed out, the policy defines "garage operations" to include "the ownership, maintenance or use of the autos indicated in Part II as covered autos", i.e., "any autos". New Hampshire has not challenged that the vehicle in question is an "auto" within the meaning of the policy. It does maintain, however, that Gallagher's use of the vehicle, even if not otherwise excluded, is outside the scope of "garage operations" be-

cause it was unrelated to the operation of a garage. The plain words of the policy definition, however, do not limit coverage to uses related to the operation of a garage, they cover apparently any "use of the autos" not otherwise excluded. If that meaning is ambiguous, it must be construed against the insurer. *Celley v. Mutual Benefit Health and Acc. Ass'n.*, 229 Pa.Super. 475, 324 A.2d 430, 434 (1974). Moreover, garage liability policies have been construed to cover accidents occurring far from the insured's place of business in the course of activity unrelated to what would ordinarily be considered garage operations. *General Finance Co. v. Pa. Threshermen & Farmers' Mutual Casualty Ins. Co.*, 48 Pa.D. & C. 476 (1943), *aff'd*, 348 Pa. 358, 35 A.2d 409 (1944) (accident occurred in the course of returning a car repossessed in another city). In this regard, it is significant that Part III of the policy covers incidents occurring

> In the United States of America, its territories or possessions, Puerto Rico or Canada or while the covered auto is being transported between any of these places.

■ New Hampshire repeatedly emphasizes that Gallagher never requested coverage for leasing operations. However, Gallagher expressly requested and received additional coverage for Gallagher Equipment Leasing Co., Inc., in June of 1981. But more importantly, Gallagher's failure to specifically request a leasing operations policy does not alter the fact that the policy in effect defines "garage operations" broadly enough to encompass unrelated activities so long as they are not otherwise excluded.

Having determined that Gallagher's use of the vehicle is within the scope of "garage operations" under the policy it is necessary to determine whether the exclusions cited by New Hampshire relating to contractual liability and auto-leasing support the disclaimer of coverage. Both Gallagher and Snyder Moore Agencies argue strenuously that New Hampshire is precluded from relying on the contract and leased auto exclusions because it failed to explain those exclusions to the insured as it is required to do under *Hionis v. Northern Mutual Ins. Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974). That case states as follows:

> Even where the policy is written in unambiguous terms, the burden of establishing the applicability of an exclusion or limitation involves proof that the insured was aware of the limitation or exclusion and that the effect thereof was explained to him.

230 Pa.Super. at 516, 327 A.2d at 365. Depositions reveal that New Hampshire and AIAC did not explain the exclusions to Gallagher. *Examination of Theodore Thomas*, 1/12/83, at 36–37, 47–48; *Examination of Paul E. Gallagher*, 1/13/83, at 77–78.

New Hampshire does not maintain that it explained the exclusions to the insured. However, it argues that *Hionis* does not apply where (1) the policy language is unambiguous, or (2) knowledge of a policy exclusion may be imputed to the insured, or (3) the expectation of coverage will not be defeated by enforcement of the exclusion, or (4) the parties are on relatively the same footing in contracting for insurance.

■ Unambiguous language does not relieve the insurer of its obligation under *Hionis*. *Hionis* itself states this, and the Pennsylvania courts have adhered to the principle. *Kelmo Enterprises, Inc. v. Commercial Union Insurance Company*, 285 Pa. Super. 13, 426 A.2d 680, 682 (1981) ("an insurer has the burden of establishing the insured's awareness and understanding of an exclusion regardless of the clarity or ambiguity of the policy language"); *Klischer v. Nationwide Life Insurance Company*, 281 Pa.Super. 292, 422 A.2d 175, 178 (1980) ("Whether the policy is clear and precise or whether it is oblique and ambiguous, the disparity between the parties remains the same").

*Hionis* appears to be applied in all but exceptional circumstances, none of which are present here. *See, e.g., Miller v. Prudential Ins. Co.*, 239 Pa.Super. 467, 362 A.2d 1017 (1976) (insured already received full compensation for medical expenses and was seeking to avoid exclusion to obtain additional recovery). *Brokers Title Co. v. St. Paul F. & M. Ins. Co.*, 610 F.2d 1174 (3d Cir.1979) (insured was knowledgeable insurance professional).

New Hampshire's argument that knowledge of the exclusion may be imputed to Gallagher because it initially requested coverage for its "sale and service hydraulic equipment" is a *non-sequitur.* By the same logic it might be said that Gallagher proved its lack of knowledge of the exclusion by leasing the vehicle without requesting further coverage. New Hampshire's argument that Gallagher had no "expectation of coverage" lacks the support of any evidence and, even if true, does not give rise to any exception to the *Hionis* doctrine.

■ With respect to the "equal footing" argument, while it is true that Pennsylvania law required New Hampshire to afford this assigned risk coverage, that itself does not place the parties on equal footing with respect to the contents of the policy. New Hampshire had drafted the terms, was familiar with the terms, and presumably did not alter those basic terms by negotiation in the typical case. These are the considerations which gave rise to the *Hionis* doctrine, and they are fully applicable here.

Accordingly, the Court finds that the *Hionis* doctrine bars New Hampshire and AIAC from invoking the exclusions in their policy issued to Gallagher.

The parties have also devoted considerable argument to the question of whether the Gallagher-Niagara Mohawk lease had terminated prior to the accident, which would render the auto-leasing exclusion inapplicable even if it were valid. Since the Court has determined that New Hampshire is precluded from relying on either exclusion in any event, we decline to address that difficult question of law and fact at this juncture.

Summary judgment is hereby granted against New Hampshire Insurance Company, and that Company is declared obligated to indemnify and pay any judgment rendered against the insured in this action, to the extent of $100,000 as provided in the policy.

IT IS SO ORDERED.