## United National Insurance Co. v. Gallagher

*Richard March and Jay Levin,* for plaintiff.
*Edward Morris,* for defendants Eileen Gallagher, Richard Gallagher and G-7412 Enterprises, Inc.
*Stanley Kops,* for defendant William Jones.
*Frank Jakobowski,* for defendant James Kimnash.
*Edwin Scherlis and Elena Yandola,* for defendant D.J. Tavern, Inc.

WRIGHT, *J.*, June 12, 1985—

HISTORY OF CASE

This is an action brought under the Uniform Declaratory Judgments Act, Act of July 9, 1976, P.L. 586, 42 Pa.C.S. §7531 et seq. All parties have waived jury trial and submitted to a trial by this court.

Defendants Eileen Gallagher and Richard Gallagher, her husband, and G-7412 Enterprises, Inc., their solely owned corporation (hereinafter Gallagher), operated a liquor establishment or taproom trading as Monday's Tavern.

Gallagher had negotiated the purchase of the tavern located at 7412 Frankford Avenue, Philadelphia, Pa., and a settlement was held in May of 1979 in the office of Barry Goldstein, the attorney for the purchasers. Present at the settlement was Irving Zager, an insurance broker, who sold to the purchasers a policy of "liability" insurance covering the premises effective November 8, 1979 to November 8, 1980 and issued by plaintiffs United National Insurance Company.

On March 8, 1980, William Jones, a minor, was allegedly served alcoholic beverages while in defendants' bar. He was shortly thereafter involved in an automobile accident while riding in a vehicle operated by James Kimnash. He has sued defendants

alleging that he became a passenger in the vehicle solely because of his intoxicated condition.

In October of 1980 one Danny Hartnett, while drinking at Monday's Tavern was allegedly involved in a shooting incident causing injuries to David Vogelhut, who sued defendants as of September term, 1982, no. 3796.

We have made the following

## FINDINGS OF FACT

1. Plaintiff is the United National Insurance Company, a corporation engaged in the insurance business in the Commonwealth of Pennsylvania.

2. Defendants are Eileen and Richard Gallagher, and G-7412 Enterprises, Inc., t/a Monday's Tavern, (hereinafter collectively referred to as Gallagher), and D.J.'s Tavern, Inc., t/a D.J.'s Tavern, William Jones and James Kimnash. Eileen Gallagher was the main officer of G-7412 Enterprises, Inc., at all times relevant hereto.

3. In May of 1979, the Gallaghers attended a meeting with Barry Goldstein, Esq., and Irvin Zager at the offices of Barry Goldstein. The purposes of this meeting was to conclude the Gallaghers' purchase of Monday's Tavern.

4. Mr. Goldstein was an attorney retained by the Gallaghers to represent them in the purchase of Monday's Tavern. Mr. Goldstein had asked Irvin Zager, an independent insurance broker, to come to the meeting to discuss the insurance requirements of the business.

5. At the May, 1979 meeting Mr. Zager recommended and explained to the Gallaghers that they should carry fire insurance, burglary insurance, workmen's compensation insurance, liquor liability insurance, and general liability insurance (specifi-

cally owners, landlords and tenants liability insurance), in order to fully protect Monday's Tavern.

6. At settlement, the Gallaghers' chose to purchase only fire and general liability insurance for Monday's Tavern.

7. The Gallaghers did not ask for, or purchase "complete coverage" at the time of the settlement.

8. Thereafter the Gallaghers purchased workmen's compensation insurance in October of 1979 and burglary insurance in November, 1979.

9. Prior to March 8, 1980, Mr. Zager suggested to the Gallaghers that they purchase liquor liability insurance. The Gallaghers chose not to do so.

10. United National issued its general liability policy no. GA 73116, with effective dates of November 8, 1979 through November 8, 1980 (hereinafter the Policy) to the Gallaghers.

1. On a page entitled "Coverage for Designated Premises and Related Operations and Progress Other Than Structural Alterations, New Construction and Demolition," and immediately below the coverage provisions, the policy contained a section entitled "Exclusions." Exclusion (h) reads as follows:

"This insurance does not apply: . . . (h) to bodily injury or property damage for which the insured or his indemnitee may be held liable

"(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or

"(2) if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed

"(1) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage,

"(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person un-

der the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the insured or his indemnitee as an owner or lessor described in (2) above; . . ."

12. William Jones claims that on March 8, 1980, he was injured in an auto accident when he was a passenger in a car driven by James Kimnash.

13. On October 6, 1980, David Vogelhut was shot while in or near Monday's Tavern. Notice of the shooting was given to United National prior to January 5, 1981.

14. On or about January 5, 1981, a representative of United National came to Monday's Tavern to investigate the shooting involving David Vogelhut.

15. On January 5, 1981, Eileen Gallagher signed a non waiver agreement whereby it was agreed that United National Insurance Company would investigate and, if necessary, defend any legal action against the Gallaghers stemming from the October 6, 1980 shooting of David Vogelhut. The non waiver agreement provided that any such action by United National would not constitute a waiver of any provision, term, condition, limitation or other portion of the insurance policy under which United National was acting. The non waiver agreement further provided that the Gallaghers were advised that grounds for disclaimer of coverage might exist, and investigation or defense by the company would not create a ground for any claim that United National had waived or forfeited its right to disclaim coverage or would be estopped from disclaiming coverage.

16. The non waiver agreement was executed by a representative of United National and by Eileen Gallagher in her dual capacity as president of G-7412 and individually. She was not subject to any duress by the plaintiff.

17. At no time from May of 1979 through the present has United National ever represented to the Gallaghers that the policy provided coverage for any claim which would have otherwise been excluded by exclusion (h) of the policy.

18. On April 14, 1981, William Jones filed a complaint in trespass in the Court of Common Pleas of Philadelphia County, at April term, 1981, no. 1778 (hereinafter the underlying action), naming as defendants James Kimnash, D.J.'s Tavern, Inc., t/a D.J.'s Tavern and G-7412 Enterprises, Inc., t/a Monday's Tavern.

19. The complaint in the underlying action alleged violations of the Pennsylvania Liquor Code and negligence in serving intoxicating beverages to a visibly intoxicated person and to a minor. The relevant paragraphs of the complaint state:

"5. That on the evening of March 7, 1980, both plaintiff and James Kimnash were patrons in both D.J.'s Tavern and Monday's Tavern in the City of Philadelphia, and both were served intoxicating liquor by the said tavern owners through their agents, servants and employees.

6. That on the evening of March 7, 1980, William Jones was under the age of 21 and the serving of Mr. Jones was in violation of the Pennsylvania Liquor Code including but not limited to 47 P.S. §4-493(1).

7. That James Kimnash was served intoxicating liquor by the aforesaid tavern owners through agents, servants and employees. Mr. Kimnash was visibly intoxicated and in violation of the Pennsylvania Liquor Code including but not limited to 47 P.S. §§4-93(1) and 4-497.

8. That as a result of serving intoxicating liquor to plaintiff who was under age, defendants and each of them deprived plaintiff of his ability to properly

and adequately function and to make such determinations as were necessary for his own health, welfare and safety.

9. That by serving James Kimnash intoxicating liquors while Mr. Kimnash was visibly intoxicated, caused James Kimnash to act in a negligent and irresponsible manner while operating a motor vehicle on the morning of March 8, 1980.

10. At approximately 4:30 a.m. on March 8, 1980, William Jones, as a passenger in the vehicle driven by James Kimnash was caused to sustain serious injury when the said vehicle travelling Northbound on Willis Road struck a pole causing severe personal injuries to plaintiff Jones.

11. It is contended that defendant James Kimnash was negligent in (a) failing to properly control the vehicle, (b) in driving a vehicle while under the influence of alcohol, (c) in allowing himself to become intoxicated, (d) in striking a telephone pole, (e) in failing to have proper control of his vehicle, (f) in failing to comply with the rules, regulations and ordinances of the Commonwealth of Pennsylvania and the City of Philadelphia.

12. It is contended that defendant D.J.'s Tavern, Inc., t/a D.J.'s Tavern and G-7412 Enterprises, Inc., t/a Monday's Tavern were negligent by their respective agents, servants and employees in (a) serving intoxicating liquor to a minor, William Jones; (b) in serving intoxicating liquor to an intoxicated person, namely James Kimnash, (c) in failing to comply with the Pennsylvania Liquor Code, (d) in failing to comply with the various ordinances, regulations and statutes of the Commonwealth of Pennsylvania and the City of Philadelphia, (e) in failing to properly instruct agents, servants and employees of defendant's not to serve people who are intoxicated, (f) in failing to properly instruct the agents, servants

and employees of defendant in the proper procedure in order to determine whether or not a patron should be served any liquor due to the age of the patron, (g) in failing to properly check Mr. William Jones for proof of age required under the Pennsylvania Liquor Code."

20. Each and every allegation contained in the above paragraphs of the complaint in the underlying action state a cause of action for bodily injury or property damage for which the Gallaghers may be held liable only "as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages."

21. As a result of the October 6, 1980 shooting, David Vogelhut filed an action in trespass in Philadelphia County at September term, 1982, no. 3796. The Vogelhut complaint was filed some two and one-half years after William Jones was injured in the automobile accident and almost two years after the Gallaghers executed the non-waiver agreement.

22. Paragraph 13 of the Vogelhut complaint alleged the following act of negligence:

"(a) Permitting intoxicating beverages to be sold on said premises without due regard to who was consuming said beverages;

(b) Selling and/or serving alcoholic beverages to persons, to wit, Daniel Hartnett, who was already intoxicated;

(c) Selling and/or serving alcoholic beverages to Daniel Hartnett, knowing or having reason to know that he was visibly intoxicated;

(d) Selling and/or permitting to be sold alcoholic beverages to Daniel Hartnett in that he was visibly intoxicated;

(e) Failing to exercise due care for the rights and safety of the plaintiff. . . ."

23. The Vogelhut complaint contained allegations which do not fall within exclusion (h) of the United National policy; in particular the allegation contained in paragraph 213(e) states a cause of action which is applicable to any person or organization, not only those engaged in the sale or service of alcoholic beverages.

24. The actions of United National in the Vogelhut case and upon which the Gallaghers allegedly relied in failing to secure liquor liability insurance coverage occurred after March 8, 1980, the date of William Jones' alleged accident.

## ISSUES

1. Whether a policy limitation unambiguous and conspicuously displayed and relied upon by insurer to deny coverage under a policy of liability insurance relieves the insurer of the legal responsibility of defending the insured in a complaint against the insured.

2. Whether plaintiff insurer is estopped from denying coverage to the insured.

## DISCUSSION

The evidence discloses that plaintiffs were made aware that the policy of insurance did not provide coverage for liquor-related incidents. On several occasions it was suggested to them that they purchase such coverage but they refused to do so.

In view of this, the conclusion is compelling that plaintiffs knew that their insurance policy excluded any coverage for liquor-related liability.

The policy is undoubtedly clear and unambiguous. Under the term exclusions, the policy states:

"This insurance does not apply."

"(h) to bodily injury or property damage for which the insured or his indemnitee may be held liable.

"(1) As a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages." The policy then proceeded to define and explain the terminology used.

In Standard Venetian Blind Co. v. Am. Empire Ins., 503 Pa. 300, 469 A.2d 563 (1983), the Supreme Court, speaking through Justice Roberts, clearly and unequivocally laid down the standard for interpreting insurance contracts at page 566.

"The principles governing our interpretation of a contract of insurance are familiar and well settled. The task of interpreting a contract is generally performed by a court rather than by a jury (Citations omitted). The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument.

"Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement (citation omitted). Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." It is obvious to this court that the parties in the instant case did not intend to provide for liquor-related incidents.

The conclusion reached herein is also consistent with Hionis v. Northern Mutual Insurance Co., 230 Pa. Super. 511, 327 A.2d 363 (1974), which held that:

"Even where a policy is written in unambiguous terms, the burden of establishing the applicability of an exclusion or limitation involves proof that the in-

sured was aware of the exclusion or limitation and that the effect thereof was explained to him."

The trial record here disclosed the atmosphere in which the insurance contract was negotiated and secured to be such that Gallagher was explicitly advised of the exclusions and limitations of the insurance policy. In addition, plaintiffs were frequently encouraged after purchasing the policy, to add the excluded coverage.

Here, unlike Hionis, supra, there can be no doubt that Gallagher was aware of the exclusion in the policy for liquor-related incidents.

We now concern ourselves with whether in view of the above, there is an obligation on the plaintiff to defend the insured in the action of Jones v. G-7412 Enterprises et al.

The cases in this Commonwealth hold that the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy. Gedeon v. State Farm Mut. Auto Ins. Co., 410 Pa. 55, 188 A.2d 320 (1963); Cadwallader v. New Amsterdam Cas. Co., 396 Pa. 582, 152 A.2d 484 (1959).

In short, to determine if the insurance carrier is required to defend an action brought against the insured, "The language of its contract (the policy) must first be looked to and next the allegations of the complaint."

It follows that if the complaint against the insured alleges facts covered by the policy the carrier should defend until it confines the claim to a recovery that the policy did not cover. In the instant matter there are no facts alleged that would support a recovery under the policy that requires a defense by the insurance carrier. See Cadwallader v. New Amsterdam Cas. Co., supra.

Finally, Gallagher assets that plaintiff is estopped from refusing to supply a defense under the insurance policy.

With this we cannot agree as the gist of estoppel is an act or misrepresentation of some kind relied on by another to his detriment. We find no evidence here of defendant Gallagher having relied on any act of representation of plaintiff to his (defendant's) detriment.

We, therefore, make the following

## CONCLUSIONS OF LAW

1. The parties to this action have been properly served.

2. This court has jurisdiction over both the parties and subject matter of this action.

3. Irving Zager was an independent insurance broker and as such was not the agent of plaintiff.

4. The exclusion within the policy is clear, unambiguous and sufficiently displayed.

5. There is no basis for any defense by defendants of an estoppel based on the fact that plaintiffs investigated and defended the suit brought by David Vogelhut.

6. Plaintiff United National Insurance Co. is obligated to defend the Gallaghers in the Vogelhut suit as that claim involves a cause of action which is not limited to one engaged in the sale or service of alcohol.

7. United National Insurance Co. has no duty to defend Gallagher in the action of William Jones v. James Kimnash, D.J.'s Tavern, Inc., t/a D.J.'s Tavern and G-7412 Enterprises, Inc., t/a Monday's Tavern, Court of Common Pleas, Philadelphia, April 1981, no. 1778.

8. Plaintiff's petition for a declaratory judgment is hereby granted.

## ORDER

And now, this June 12, 1985, upon consideration of plaintiff's petition for declaratory judgment and defendants' responses thereto, it is hereby ordered and decreed that plaintiff's petition for declaratory judgment is granted.