## Rhoads et al. *v.* Rhoads, Appellant.

Argued November 17, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*John E. McDonough,* with him *R. P. Lessy* and *Joseph E. Pappano,* for appellant.

*Paul Lane Ives,* for appellees.

OPINION BY RHODES, J., February 26, 1937:

Plaintiffs instituted an action in assumpsit on a written contract against the defendant. At the conclusion of the trial the court below affirmed plaintiffs' point for binding instructions. A verdict for plaintiffs was rendered for $1,391.67, with interest from July 10, 1934, or a total of $1,440.39, the full amount of plaintiffs' claim. Defendant's motion for a new trial was refused, and he has appealed.

This action is based on a written contract dated January 25, 1932, between defendant and his father, Alfred C. Rhoads, who died July 10, 1933, wherein, after reciting that the parties were conducting a general agency for the sale and distribution of Philadelphia morning newspapers in and near the city of Chester, Pa., and that Alfred C. Rhoads was the sole owner thereof, and should so continue for and during the term of his entire natural life, it provided as follows: "2. Upon the death of the said Alfred C. Rhoads, the said Hilbert C. Rhoads shall become the sole owner of said agency and said business and shall be entitled to receive the full income and profits arising therefrom, upon the condition, to which the said Hilbert C. Rhoads hereby for himself, his heirs, executors and administrators agrees, to wit, that the said Hilbert C. Rhoads shall pay the sum of four thousand one hundred and seventy-five dollars in three equal annual installments, payable at the respective periods of one year, two years and three years after the date [death]

144

of the said Alfred C. Rhoads, to James F. Rhoads, William J. Rhoads, Anna M. Kirk, Bessie Ford and Margaret Mitchell absolutely share and share alike.

"3. The said parties agree that if after the death of the said Alfred C. Rhoads the three Philadelphia morning newspapers shall at any time during said period of three years refuse to continue to supply their newspapers to the said Hilbert C. Rhoads, then and in that event the said Hilbert C. Rhoads shall be required to pay only a proportionate part of the said sum of four thousand one hundred and seventy-five dollars based upon the length of time during which he may be permitted to continue said business. In the event of the *withdrawal of the furnishing of said newspapers* by any one or two of said newspapers, the said Hilbert C. Rhoads shall be proportionately released from his obligation to pay said sum of four thousand one hundred and seventy-five dollars, all three of said newspapers being considered to have the following proportionate values, to wit, the Philadelphia Inquirer, 18 parts; the Philadelphia Record, 9 parts; and the Public Ledger, 10 parts. The said proportional amount to be released to be calculated also on the portion of said period of three years' time during which such papers may not be furnished to him.

"4. This agreement shall be of no effect whatsoever should the said Hilbert C. Rhoads not be living at the time of the death of the said Alfred C. Rhoads, and in such event the said business shall form a part of the estate of the said Alfred C. Rhoads and be subject in all respects to the provisions of the will of the said Alfred C. Rhoads."

The writing was subscribed with the names of the parties and their seals affixed.

The verdict was for the amount of the first installment, payable one year after the date of the death of Alfred C. Rhoads by the defendant to the plaintiffs.

Plaintiffs offered in evidence paragraphs 2 to 6, inclusive, of the plaintiffs' statement, and the corresponding paragraphs of defendant's amended affidavit of defense and new matter, which admitted the averments and facts set forth in such paragraphs of the plaintiffs' statement. The following facts were thereby established: On or about the 25th day of January, 1932, the defendant entered into a contract in writing between himself and Alfred C. Rhoads, the pertinent parts of which we have recited. The plaintiffs are those persons named in said contract. Alfred C. Rhoads died on the tenth day of July, 1933. Following his death the defendant continued to conduct the business mentioned in the said agreement, and is conducting the same. The first installment payable by the defendant to the plaintiffs under the said contract became due and payable on July 10, 1934, and, although often requested, the defendant has neglected and refused and still neglects and refuses to pay the said installment or any part thereof.

It was admitted that the Public Ledger ceased to be published as a separate newspaper on April 15, 1934, and that thereafter the paper published by the Philadelphia Inquirer Company was designated:

"The Philadelphia Inquirer
"Public (Seal) Ledger
"Copyrighted 1936 by The Philadelphia
"Inquirer Co."

Appellant contends: (1) That the oral evidence was for the jury on a disputed question of fact; (2) that the court below improperly disregarded the testimony and construed the contract and the evidence itself; (3) that the writing was testamentary, and that the right of action was in the executors of the last will and testament of Alfred C. Rhoads, deceased.

Appellant's first contention cannot be sustained. The parol evidence in this case was introduced by appel-

lant, but it created no disputed question of fact. Such evidence was not submitted dehors the instrument for the purpose of interpreting it, and had no relevancy to the written contract. As there was no ambiguity in the contract, which was in writing, it was the duty of the court to determine its meaning; and, as the terms and language of the contract were not disputed, its legal effect was a question of law to be determined by the court. See 6 R. C. L. § 249, p. 863. The court below had received all the information, which was not in dispute, that was necessary in order to put it in a position to interpret and construe the writing, and apply it according to the intention under which it was written. See *Miller v. Fichthorn*, 31 Pa. 252.

In the instant case there was nothing for the jury to decide, and the question before us is whether the construction placed upon the contract by the court below was correct.

The court below, in its opinion refusing appellant's motion for a new trial, stated: "We are not in accord with the contention of defendant that the consolidation of the Public Ledger with the Philadelphia Inquirer and its continuance under the new title amounts to a withdrawal of the furnishing of Public Ledger under the contract. The agreement is not ambiguous. True a particular newspaper changed its heretofore method of appearance, but it did appear under a new title and in collaboration with another newspaper, but there was no refusal or withdrawal of service such as was contemplated by the agreement. Had defendant received notice from the Public Ledger that in the future it would no longer serve him, he would then be entitled to a credit under the agreement. ......

"From a careful analysis of paragraph three, we are convinced that only the refusal of the publishers to serve one of the three newspapers mentioned would

entitle defendant to the credit provided for in the contract."

With this construction of the contract we cannot agree. The contract plainly contemplated the existence of the three newspapers for at least three years, and attached to each a relative value. When the Ledger discontinued publication it ceased to exist as a separate entity, and therefore could no longer have the value of 10 units to the business in relation to the Inquirer's 18 and the Record's 9 units. It is to be observed that the payments by the appellant to the appellees are predicated on three papers being furnished to the appellant during the three-year period, and that he is to be released for such a proportional amount of that time as *such papers may not be furnished to him."* To sustain the construction of the court below, it would be necessary to assume that the Inquirer after its merger with the Ledger still constituted two papers, having a relative value, after the merger, of 28 parts to the Record's 9 parts. Such a construction is neither reasonable nor natural. The relation that one paper was to bear to another was plainly and definitely stated in the contract. We cannot read into the contract an intent on the part of the parties that, upon the discontinuance of the publication of the Ledger and its publication thereafter with the Inquirer, there was to be a corresponding consolidation of their relative values. It appears to us that no matter whether one of the papers ceased to be published as the result of merger, or otherwise, the three papers mentioned in the contract would not then be furnished to appellant, and that he would be entitled to a credit, proportionately, on the amount payable to the appellees, as stipulated in the contract. Nor can it be logically said that, after the merger of the two newspapers, their publication as one still constitutes two newspapers under the provisions of the contract, and imposes an obligation upon the

appellant to pay accordingly. The paper published under the heading "The Philadelphia Inquirer—Public Ledger" cannot by any stretch of the imagination be still considered as two papers, having the respective proportionate values designated in the contract.

The court below apparently bases its construction of the contract on what we believe to be an erroneous conclusion that only the refusal of the publishers of the Ledger to serve appellant would entitle appellant to the credit provided in the contract. Had the Ledger ceased publication without having merged with the Inquirer, could the argument be sustained that the appellant would still be deprived of the credit provided in the contract unless the publisher had refused to longer serve him? To state the proposition is to refute it. After the Ledger ceased to be published there could no longer be a continuation of a supply of that paper to the appellant; the supply, or the furnishing of the paper, was automatically withdrawn, and this is true whether its separate publication ceased by merger or in some other manner.

Appellant was entitled to the credit provided for in the contract from the time the Ledger ceased to be published as a separate newspaper on April 15, 1934.

Appellant contends that the writing in question is testamentary. Appellant in his amended affidavit of defense admits that he entered into a contract in writing with his father; that he took over the business mentioned in the said contract; that he has conducted the same since that time; and that the first installment thereunder became due and payable to the appellees on July 10, 1934. He has recognized the instrument, which he executed, as a contract, and has enjoyed the benefits thereof since July 10, 1933. He has claimed the advantages and rights under the instrument, and he is now estopped from repudiating its burdens and disclaiming his liability thereunder. It suffices to say

that the instrument cannot now be construed as testamentary, and appellant relieved of his promise to pay appellees as the instrument which he and his father executed provides. The rights and liabilities arising from the agreement have been recognized by the parties and have become established by their conduct.

Judgment is reversed, and the record is remitted to the court below that judgment may be entered for the plaintiffs in accordance with this opinion.