COUNTY OF ERIE, Plaintiff,

v.

AMERICAN STATES INSURANCE COMPANY, Defendant and 3rd Party Plaintiff,

v.

Patricia Ann SANTAFEMIA, 3rd Party Defendant.

Civ. A. No. 83–76 ERIE.

United States District Court, W.D. Pennsylvania.

Oct. 20, 1983.

---

Kenneth Chestek, Erie, Pa., for plaintiff.

Jack Plowman, Plowman & Spiegel, Pittsburgh, Pa., for defendants.

## OPINION

WEBER, District Judge.

The matter is before the court on defendant-third party plaintiff's motion for summary judgment.

This dispute concerns the scope of coverage provided under two Public Employees Blanket Bonds issued to Erie County by American States. The action was originally filed in the Court of Common Pleas of Erie County in March 1983 and was removed to this court pursuant to 28 U.S.C. § 1441. Erie County seeks to recover under the Bonds for losses sustained by the acts of Patricia Ann Santafemia, third party defendant, who served at relevant times as the Director of the County's Tax Claim Bureau (hereinafter also referred to as Director). The question before the court is whether as a matter of law the acts of Santafemia were expressly excluded from coverage under the Bonds. American States filed a Motion for Summary Judgment with supporting affidavits and brief, and Erie County has responded in kind opposing the motion. The matter is now ripe for the court's consideration.

## I. FACTS

A review of the facts reveals that on or about October 13, 1982, Santafemia confessed to County officials that she had stolen large sums of money from the Erie County Tax Claim Bureau Trust Account throughout her term of service as Director of that Bureau. The County repeatedly sought payment for the loss it sustained under two existing employee fidelity bonds which are substantially alike save for the periods of coverage provided under each. American States had issued to Erie County Public Employees Blanket Bond No. EX 396–215 (May 1, 1977 to May 1, 1981) and EX 480–480 (May 1, 1981 to present).[1] Both of the bonds contain the following exclusion in the definition section of the "conditions and limitations" clause—

'Employee' as used in Insurance Agreements 3 and 4 means a person while in the employ of the Insured during the Bond Period who is not required by law to furnish an Individual Bond to qualify for office and who is a member of the staff or personnel of the Insured but does not mean any Treasurer or Tax Collector by whatever title known.

Prior to the issuance of the bonds, "application-questionnaires" were executed on behalf of Erie County by William O. Hill, Jr., first in 1977 in his capacity as County Commissioner, and in 1981 as Chairman of the Erie County Council. The printed form of each application-questionnaire contains a recital excluding automatically from coverage "Treasurers and Tax Collectors by whatever title known" and solicits from the insured through the questionnaire those personnel to be excluded. The applications executed by Hill answer this questionnaire by listing the excluded positions, including in abbreviated form, one "delinquent tax collector." Prior to Santafemia, the position of Director of the Erie County Tax Claim Bureau was held by Jerry Robbins (January 7, 1976 to March 26, 1979) for whom the County had obtained separate coverage under a Public Official Bond. The Bond was issued by Pennsylvania National Mutual Casualty Insurance Company on March 29, 1976 under instructions from the Erie County Commissioners and described Robbins as a "delinquent tax collector." Continuation certificates were issued on January 19, 1977 and January 11, 1978. We note that during the time Robbins served as Director of the Tax Claim Bureau, according to his affidavit, the County Commissioners were his immediate supervisors. After the adoption of the Home Rule Charter which became effective January 1, 1978, the Director of Finance, Joseph Schmitt, became supervisor of the position.

American States denies coverage relying on the language of the fidelity bonds and the responses submitted by the County,

---

**1.** The 1977–81 Bond covered loss up to $25,000, the 1981 Bond covered loss up to $100,000, by the act of any employee or any employees in collusion with one another. The total embezzlement of Santafemia exceeded this coverage.

through Hill, in the "application questionnaire." American States also contends that the County was independently aware that no coverage was provided under both Public Employee Blanket Bonds on the basis of two separate communications, one written and one oral, to County officials. In the first, Jerome A. Matuszak, Manager of Mattis & Robie, Inc. insurance agency stated in a letter to the County Director of Finance, Joseph Schmitt, on March 9, 1978 that "... neither your Bond ... or the Blanket Public Employees Bond provides indemnity for Tax Collectors.... Enclosed is the renewal certificate for Jerry Robbins Tax Collector Bond." In the second, Mr. Matuszak gave similar statements orally to County Council members at a work session in 1978 called to discuss the County's insurance coverage needs. According to Matuszak, in his affidavit, he warned Council members not to discontinue separate coverage under the Public Official Bond for Jerry Robbins because the Public Employees Blanket Bonds did not cover him in his duties as Director of the County Tax Claim Bureau.

For its part, Erie County contends that Ms. Santafemia was covered by the Public Employee Blanket Bonds. The County takes issue with the meaning of the language relied upon by American States to support an exclusion. It offers, by way of affidavit, the expert opinion of an insurance consultant who states that within the insurance industry, the phrase "... Tax Collector by whatever title known," as contained in the bonds, refers to elected tax collectors who obtain their own separate fidelity bonds and not to the appointed position of Director of the Tax Claim Bureau for which a separate fidelity bond is not required. While state law does not specifically require a bond for the Director of the Tax Claim Bureau nevertheless it provides that the:

"County Commissioners ... shall have the power to require the director of the bureau of the county, and such employees and assistants of the bureau, as may by them be designated, to give bonds to the Commonwealth for use of the taxing districts ... and for the use of any other person having a claim by reason of the act of such director ... conditioned for the faithful performance of the duties of their office ... and a strict accounting and payments over of all moneys collected or received by them under the provisions of this Act." 72 P.S. § 5860.203

The agent, Mr. Matuszak, who wrote the bonds now concurs in this position of the County despite prior assertions to the contrary.

The County objects to the use of the "application-questionnaire" documents in this proceeding because the applications were neither attached to the Bonds nor were copies provided Erie County. Pennsylvania statute provides that applications shall not be received in evidence in any controversy between the parties when not contained or otherwise attached to an insurance policy. 40 P.S. § 441. The County further contests the basis of the applications as executed by Councilman Hill. It relies on Article III of the Administrative Code of the County of Erie which provides that the purchase of insurance coverage was to be made by the County Executive or his designee, the Director of Purchasing, and not by any member of the Erie County Council.

Finally, the County disagrees with the contention that it was independently aware of any exclusion based on the written or oral communications from Jerome Matuszak. First, the County contends it has no record of the letter from Matuszak to Joseph Schmitt, and, second, a review of the minutes of County Council meetings fails to reveal any presentation made by Matuszak relating to County insurance needs.

As a prelude to our analysis we note that under the Local Tax Collection Law, tax collectors, as the term is often used, refers to those elected to the position for the various taxing districts throughout the County. These elected tax collectors are independent of the County of Erie and must provide their own surety bonds. 72 P.S. § 5511.4. It is undisputed that the

Director of the County Tax Claim Bureau has never been officially titled either a tax collector or delinquent tax collector. But neither can it be disputed that the position occupied first by Jerry Robbins and then by Patricia Santafemia was commonly referred to as that of the delinquent tax collector. This is made clear both by the affidavit of Robbins to this effect and the legislative scheme of the Real Estate Tax Sale Law administered by the Director of the Tax Claim Bureau which law revised and consolidated the laws relating to delinquent taxes. 72 P.S. § 5860.101 et seq., 1947, July 7, P.L. 1368. It is also apparent that the County knew of the title for the position because the Public Official Bond purchased to provide separate coverage for Robbins explicitly described him as a "delinquent tax collector."

■ In resolving a dispute concerning the scope of coverage under fidelity bonds, we are guided by general contract principles in our efforts to discern the intent of the parties based on the written agreement between them. Fidelity bonds are a form of insurance subject to the rules applicable to insurance contracts generally. And if the words of an insurance policy contract are clear and unambiguous, they are to be given their plain and ordinary meaning. *St. Paul Fire and Marine Ins. Co. v. United States Fire Insurance Co.*, 655 F.2d 521 (3d Cir.1981). The Court's duty is to ascertain the intent of the parties as manifested in the language of the agreement. *Mohn v. American Cas. Co. of Reading*, 458 Pa. 576, 326 A.2d 346 (1974). Moreover, the court should read such provisions to avoid ambiguities, if the plain language of the contract permits. *Pennsylvania Manufacturers' Assoc. Ins. Co. v. Aetna Casualty & Surety Ins. Co.*, 426 Pa. 453, 457, 233 A.2d 548 (1967). The ambiguity of a written contract is a matter of law to be decided by the court. *Clayman v. Goodman Properties, Inc.*, 518 F.2d 1026 (D.C. Cir.1973); *BBCI, Inc. v. Canada Dry Delaware Valley Bottling Co.*, 393 F.Supp. 299 (E.D.Pa.1975); *Magill v. Westinghouse Elec. Corp.*, 327 F.Supp. 1097 (E.D.Pa. 1972). The construction and legal effect of

an unambiguous writing is for the court and not for a jury. *Goldinger v. Boron Oil Co.*, 375 F.Supp. 400 (W.D.Pa.1974). If an ambiguity does exist, and the insurer wrote the policy, the ambiguity is generally resolved in favor of the insured and against the insurer. *Hionis v. Northern Mutual Ins. Co.*, 230 Pa.Super. 511, 327 A.2d 363, 365 (1974). If there is more than one permissible inference as to the intent to be drawn from the language employed, the question of the parties' actual intention is a triable issue of fact. *Bear Brand Hosiery Co. v. Tights, Inc.* 605 F.2d 723, 726 (4th Cir.1979). But conflicting conclusions as to the interpretation of a written contract which is clear and unambiguous as to its terms will not create a material issue of fact to bar disposition by summary judgment. *Goldinger*, 375 F.Supp. at 413.

## II. DISCUSSION

Accordingly, it is incumbent upon the Court to determine first, whether the language of the exclusion, "... tax collectors by whatever title known," is clear and unambiguous; second, if unambiguous, whether the words of exclusion when given a meaning consistent with the intent of the parties apply only to elected tax collectors required by law to furnish a separate fidelity bond; third, if not so limited whether the words of exclusion can be applied to the Director of the Tax Claim Bureau; and fourth, whether the insured knew the nature or scope of any exclusion found to exist under the bonds.

■ American States argues that the language of the exclusion is clear and unambiguous. We agree. The insurer chose to use precise language, agreed to by the insured, which excluded from the definition of employee under the bond "... tax collectors by whatever title known." It is difficult to imagine language that could more plainly state a desire to exclude from the reach of the bond those officials who function as tax collectors regardless of their title. Finding no ambiguity, the rule that such contracts are to be construed strictly

against the insurer does not apply. *Eastern Associated Coal v. Aetna Cas. & Ins.,* 632 F.2d 1068, 1077 (3d Cir.1980).

We must next determine whether the exclusion is limited to elected tax collectors as the plaintiff contends, or more precisely, whether a factual issue exists as to whether such a limitation was intended by the use of the language. Plaintiff relies upon the affidavit of an insurance consultant and authorized agent for American States who states, that within the insurance industry the words "Tax Collector" when used in a fidelity bond refers to elected tax collectors who obtain their own separate fidelity bonds. As previously noted, Santafemia served by appointment. Plaintiff concludes that Santafemia was not a Tax Collector within the meaning of the exclusion.

There is no evidence that the parties intended the limitation suggested by the plaintiff's expert. Absent evidence that the parties intended, or relied upon, such a qualified meaning for the words "Tax Collector", we cannot interject an ambiguity in the words agreed upon by the parties to create an ambiguity where none exists. There is no evidence that the County was guided by the definition of a Tax Collector as that term is used in the insurance industry. It is more likely that the County was guided by the definition of the term as used in the Pennsylvania Tax Collector Law. 72 P.S. § 5511.2 (1983 Supp.) The statute encompasses both elected and appointed tax collectors, both of whom are required to furnish a bond. Not knowing what the parties relied upon in the use of this clause, and in the absence of any evidence that they intended a limited definition for the term "Tax Collector", we must look to the intention of the parties as manifested in the agreement between them when the language used therein is given its plain and ordinary meaning. We find the evidence unrebutted that the parties intended the exclusionary language to apply to both elected and appointed tax collectors. First, as we have noted, the language used is unambiguous. Had the parties wished to exclude from coverage only elected tax collectors while providing coverage to all others, we think they would have found the words to do so. On the other hand, it would be difficult to find words suitable to exclude both elected and appointed tax collectors by use of language other than that adopted by the parties here. Second, the language of the exclusionary clause indicates that the parties intended to exclude both elected and appointed tax collectors. The portion of the definitional section of the bond which gives rise to the exclusion bears repeating in relevant part:

> 'Employee' as used in Insurance Agreements 3 and 4 means a person ... who is not required by law to furnish an Individual Bond to qualify for office ... but does not mean any Treasurer or Tax Collector by whatever title known.

All elected tax collectors in Pennsylvania are required by statute to furnish a fidelity bond to qualify for office. 72 P.S. § 5511.-4. The above clause excludes from coverage those required by law to furnish a bond, such as elected tax collectors, and any tax collector, by whatever title known. The obvious import of the clause is that some tax collectors intended to be covered by the exclusion may not be required by statute to furnish a bond to qualify for office and may not be called tax collectors.

Finally, it is well-recognized that if the language of a contract is clear and unambiguous, extrinsic evidence as to the meaning of terms contained therein is inadmissible and they are to be given their usual and primary meaning. 30 Am.Jur.2d *Evidence* § 1066 (1967). We do not consider the term "Tax Collector" to be a technical word or term of art requiring it to be given a meaning peculiar to a particular profession or business. Our result would be the same in any event where as here, upon consideration of the entire contract, it is apparent that technical words are employed in a sense entirely different from their technical meaning. 17 Am.Jur.2d *Evidence* § 251 (1964). Because the clause excludes from coverage those functioning as tax collectors whether required or not required by

statute to furnish a bond, it is apparent that the parties did not rely upon the expert's stated definition of "Tax Collector" as used in the insurance industry where, we are told, the term applies only to those elected and required by statute to furnish a bond. There was no evidence the County was aware of or acted in reliance upon a technical definition for the term "Tax Collector". On the contrary, the County knew it was dealing with the plain meaning of the term when it was asked to identify excluded offices in the application-questionnaire and it responded by listing "one delinquent tax collector." Accordingly, we find no evidence that the parties intended to limit the exclusion under the fidelity bonds to elected tax collectors only or to those required by law to furnish a separate bond.[2]

■ Finding no inherent restriction in the exclusionary clause, we must now consider its breadth to determine whether it extended to the Director of the Tax Claim Bureau. Plaintiff contends, through the affidavit of its current Director of Finance, James Goodrich, that the primary duty of the Director was to supervise the Bureau in administering the Real Estate Tax Sale Law, 72 P.S. § 5860.101 et seq. This statute revised and consolidated the laws relating to delinquent taxes. The defendant, relying on the affidavit of Santafemia's predecessor, Jerry Robbins, submits that the primary duty of the Director was the collection of delinquent real estate taxes. The affidavits of Robbins and Goodrich indicate that the parties agree that the duties of the Director included "entering the return of delinquent tax claims to property owners, mailing notices, advertising, and posting property for delinquent tax sales; accepting payment toward delinquent taxes; holding delinquent tax sales; and remitting monies received to the County, other taxing districts and other lienholders." There is no dispute that the position held by Robbins and Santafemia was popularly

known as the "delinquent tax collector" although it was never officially titled as such. We are convinced from the foregoing that the duties of the Director of Erie County's Tax Claim Bureau were in the nature of a tax collector sufficient to fall within the exclusion "... Tax Collector by whatever title known" found in the fidelity bonds.

The plaintiff submits through the affidavit of Goodrich, that the receipt of delinquent tax payments was one of many duties performed by the Director and that this duty was performed primarily by members of the Staff and not by the Director. However, an examination of the statute and the evidence presented indicate that the other duties of the Director were designed to facilitate the identification, collection and disposition of delinquent taxes by the bureau. And regardless of who was primarily responsible for handling the collections received from delinquent tax payments or delinquent tax sales, this lawsuit makes it abundantly clear that the director supervised, and with frequency, came in direct contact with tax receipts entrusted to the Bureau.

We find other support for our determination that the exclusion extended to Santafemia. The applications for the fidelity bonds executed by the County contain specific reference to an exclusion for one delinquent tax collector. As previously noted, the position held by Santafemia was unofficially called "delinquent tax collector." The language of the exclusion contained in the applications parallels that contained in the bonds. It is equally unambiguous. The information contained in the applications ostensibly came from, and was endorsed by, County Officials.

■ Plaintiff resists the admission of the applications into evidence on two grounds. First, plaintiff contends that the Insurance Company Law, 40 P.S. § 441, requires their exclusion because they were not attached to the Bonds. Second, plaintiff argues that

---

**2.** We are fortunate that the parties did not use the term "publican", which not only includes the biblical meaning of the detested Roman tax collectors, but also the British usage to describe the keeper of a public house. See Webster's *International Dictionary* (2nd ed.).

members of County Council had no authority to purchase insurance on behalf of the County and William O. Hill, Jr., as Chairman of County Council had no authority to sign the Application for Public Employee Blanket Bond No. EX 480–480, in 1981.

■ As to plaintiff's first contention that Pennsylvania statute requires exclusion of the applications, we find that 40 P.S. § 441 applies to ordinary policies or contracts of insurance and not fidelity bonds. The Pennsylvania Supreme Court in *Gordon v. Continental Casualty Co.*, 319 Pa. 555, 181 A. 574 (1955), considered the predecessor Act which dealt with life and fire insurance policies and concluded that the Insurance Company Law does not apply to fidelity bonds. While plaintiff questions the continuing vitality of *Gordon*, we are bound to consider the Supreme Court's undisturbed holding in *Gordon* as good law on this point. Accordingly, the applications are properly admitted to determine the parties' understanding regarding the scope of the exclusion.

■ Plaintiff further contends that as County Council Chairman, William O. Hill, Jr., lacked authority to sign for or procure the coverage provided by, Public Employee Blanket Bond No. EX 480–480. We find the argument unconvincing as a basis to exclude the applications from evidence. First, plaintiff does not challenge the admissibility of the earlier of the two applications, relating to Bond No. EX 396–215, signed by Hill in his capacity as County Commissioner at a time prior to the adoption of the Home Rule Charter in 1978. We note that the language relating to the scope of the exclusion contained in Bond No. EX 396–215 is identical to that contained in No. EX 480–480. At a minimum, therefore, the application for No. EX 396–215 is admissible on the question of the breadth of the exclusion. Second, while Article III of the Administrative Code of the County of Erie provides that the purchase of insurance coverage is to be made by the County Executive, we note that Article VII provides that County employees shall be covered by a blanket bond in an amount to be fixed from time to time by County Council. Arguably, therefore, Hill acted within his authority in executing the applications. Third, plaintiff has ratified the provisions of the Bonds and seeks recovery under them. As such, plaintiff waived any challenge to Hill's authority in signing the applications which were necessary conditions to coverage under the Bonds. Fourth, whether Hill read or reviewed the applications is of little moment since a person who signs an agreement is conclusively presumed to know its contents and to assent to them. *Ferrara S.P.A. v. United Grain Growers, Ltd.*, 441 F.Supp. 778, 781 (S.D.N.Y.1977). Finally, there is no evidence that Hill actually failed to read the application he executed for Bond EX 396–215. Counsel for the plaintiff at oral argument specifically conceded that the deposition of Matuszak was silent as to whether Hill did or did not read the first bond. Moreover, at the time Hill signed the first bond he acted as County Commissioner. We note that 72 P.S. § 5860.203 places authority for the procurement of coverage for the Director of the Tax Claim Bureau with the County Commissioners.

■ Satisfied that the bond language excluded Santafemia from coverage when she became Director of the Tax Claim Bureau, we must determine whether the County was made aware of the exclusion. Pennsylvania law requires the insurer to shoulder the burden of proof of establishing knowledge of the exclusion. *Kelmo Enterprise, Inc. v. Commercial Union Insurance Co.*, 285 Pa.Super. 13, 18, 426 A.2d 680 (1981); *Klischer v. Nationwide Life Ins. Co.*, 281 Pa.Super. 292, 299, 422 A.2d 175 (1980). An insurer has the burden regardless of whether the policy language is ambiguous. *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 516–517, 327 A.2d 363, 365–366 (1974).

Plaintiff submits that if the exclusion was applicable to Santafemia, the defendant is precluded from relying on it because the record does not establish that an authorized representative of the plaintiff was made aware of the exclusion. Defendant

relies upon the two communications of the insurance agent Jerome Matuszak in its response. The letter of Matuszak to the County's Director of Finance Joseph Schmitt dated March 9, 1978 stated that the Blanket Public Employees Bonds would not provide coverage to Santafemia's predecessor Jerry Robbins. Plaintiff responds that it cannot locate the letter and that Schmitt died in 1978. We note that the presumption of the receipt of a letter arising from proof that it has been duly mailed is generally regarded as a presumption of fact which may not apply where the person addressed has no opportunity to deny receipt of a letter claimed to have been mailed to him. 29 Am.Jur.2d *Evidence* § 194. Matuszak's oral communication to the members of the County Council sometime in 1978 that coverage for the position held by Robbins "could fall into a gray area" is equivocal at best and insufficient to provide notice that the Bonds in existence would exclude Robbins or his successor Santafemia. Plaintiff further submits that a review of the County Council minutes for the relevant time period fails to reveal any evidence of the communication made by Matuszak.

Notwithstanding the foregoing, we find unrebutted evidence that the County knew of the exclusion and acted repeatedly in ways consistent with such knowledge. First, the applications executed by Hill demonstrate that plaintiff, by its responses therein, knew that the position held by Santafemia was excluded from bond coverage. Again, plaintiff submits that no one in a position of proper authority was aware of the exclusion. But plaintiff has provided no support for the proposition that Hill as County Council chairman and previously as County Commissioner fails to impute such knowledge to the County when he executed the application questionnaires necessary for coverage under the Bonds. Second, we find that the duplicative coverage secured by the County for Jerry Robbins during his term as Director of Erie County's Tax Claim Bureau permit the inference that the County considered his position, and that of his successor, to be excluded from coverage.

We find these undisputed facts sufficient to satisfy the requirements of the *Hionis* test and sufficient to warrant a grant of summary judgment in favor of the defendant. We are mindful that *Hionis* was decided in the context of resolving a dispute between contracting parties of vastly disparate bargaining strength. Under such circumstances, the insurer can generally dictate the terms and conditions of the insurance contract. The *Hionis* rationale is less compelling in the instant case where the County, equipped as it is with a battery of legal talent, is likely to be both more discriminating in selecting a package of insurance coverage and better able to ascertain its legal obligations arising from an insurance contract.

Having fully considered all of the evidentiary material proffered by the parties in support of and opposing the motion, and having had the benefit of their briefs and oral argument thereon, we come to the basic question of whether the matter is susceptible to determination by summary judgment under Fed.R.Civ.P. 56. In considering plaintiffs' objections we note that all of the relevant evidence has been placed before us that would be presented to a trier of fact in a plenary trial. The result is that we find no controverted genuine issues of material fact. The ultimate issue is the interpretation of a written contract. Such a question is a matter to be decided by the court. The court interprets the meaning of the contract unless the court finds the language of the contract ambiguous, in which case the trier of fact considers matters of evidence outside the contract to determine the intention of the parties.

In this case the plaintiff has offered the opinion of an expert witness, by affidavit, which includes some exhibits from industry manuals, to the effect that the meaning of the contract language, according to the construction given it by the insurance industry, made the exclusion only applicable to elected tax collectors, who must, by statute, obtain their own fidelity bonds.

Were the matter to be given plenary trial the court would have to exclude it from

evidence under the parol evidence rule. Where language employed in a contract is plain and unambiguous when read in connection with the other provisions of the contract, extrinsic evidence as to its meaning is inadmissible. 30 Am.Jur.2d *Evidence* § 1066 (1967). Nor, as we have previously pointed out, does the technical language exception to the parol evidence rule apply here.

Even if this opinion evidence were to be considered, we find it equivocal. While the Bloomstine affidavit states his opinion that under the interpretation of the insurance industry the exclusion applies only to elected tax collectors who must obtain their own separate fidelity bonds, the citations to insurance industry manuals upon which he relies, are not so positive.

The Rough Notes: Monthly Policy, Form, Manual Analysis, 244.3 on Blanket Bonds (Ex.C to the Affidavit) says:

> Blanket bonds may be written to cover a number of officials. Public Employee Blanket Bonds may be written to cover all employees, including officials and heads of departments, except treasurers and tax collectors. (Such persons may be required by law to file separate bonds).

Similarly, the F.C. & S. Bulletin (Ex. B) says:

> The only restriction on the Public Employee and Public School System Employee Blanket bonds is that neither applies to *treasurers and tax collectors* (italics in original)—or officers having different titles, but duties similar to this. These offices require individual bonds—often in a form prescribed by statute—and carefully and individually written. Any other officer and employee *required by law to file an individual bond* (italics in original) is, of course, ineligible.

We can only repeat what we said in *Goldinger v. Boron Oil Co.*, 375 F.Supp. 400 (W.D.Pa.1974):

> While the counsel have argued different conclusions from the evidentiary material we do not believe that this creates a material issue of fact. The court is faced

with the interpretation of a written contract which is clear and unambiguous in its terms. The conflicting conclusions argued are to its antitrust effect and to the nature of the relationship between the parties. See *Allen-Bradley Co. v. Air Reduction Co., Inc.*, 273 F.Supp. 930 (W.D.Pa.1967), aff'd p.c. 391 F.2d 282 (3d Cir.1968).

> ... The cases indicate that the construction and legal effect of an unambiguous writing is for the court and not for a jury. *Holmes v. Chartiers Oil Co.*, 138 Pa. 546, 21 A. 231 (1891); *Rhoads v. Rhoads*, 126 Pa.Super. 141, 190 A. 533 (1937); *United States v. Manufacturers Casualty Ins. Co.*, 158 F.Supp. 319 (D.C. N.Y.1957). Summary Judgment is properly used for interpreting a contract whose terms are considered ... to be clear and unambiguous, despite the parties' divergent views of what the agreement provided. *Green v. Valve Corp. of America*, 428 F.2d 342 (7th Cir.1970); *Trans-Fuel, Inc. v. Saylor*, 440 Pa. 51, 269 A.2d 718 (1970). 375 F.Supp. at 413.

In conclusion, we find that the parties both intended and understood that the unambiguous language of the exclusion extended to the Director of the Erie County Tax Claim Bureau. Wherefore, summary judgment will be entered in favor of the defendant American States.